588 So.2d 748 (1991)
Robert E. BRODHEAD
v.
BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES, G. Warren Smith, and Larry Cram.
No. 91 CA 0399.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Writ Denied January 6, 1992.
*749 Murphy J. Foster, III, Baton Rouge, for plaintiff-appellant Robert E. Brodhead.
T. Jay Seale, III, Hammond, for defendant-appellant Board of Trustees for State Colleges & Universities et al.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
An individual and a state university dispute the existence vel non of a contract of employment for a fixed term. We reverse the judgment of the trial court which found that plaintiff, Robert E. Brodhead, had a contract of employment for a term of five years as athletic director for Southeastern Louisiana University (SLU).
Mr. Brodhead filed suit against the Board of Trustees for State Colleges and Universities (Board) seeking damages for breach of contract. He alleged that he entered into an oral employment contract whereby he was to be a full-time athletic director for SLU for five years, from July 1, 1988, through June 30, 1993, at the salary of $72,000.00 per year. The university terminated Mr. Brodhead's employment after 10 months. The trial court awarded plaintiff judgment for $275,598.00, the amount of salary due for the remaining 50 months of the five-year term, discounted to present value.
In addition to damages representing the remainder of salary due under the alleged contract, plaintiff sought damages for detrimental reliance, damages for infringement of his constitutional liberty and property interests for failure to receive a hearing, and damages for the issuance of statements concerning his termination which he alleged were inaccurate and stigmatizing. In addition to the Board, the plaintiff named as defendants the Board's Systems President, Dr. J. Larry Crain, and SLU President Dr. G. Warren Smith. The trial court denied plaintiff damages other than salary and dismissed his claims against the two individual defendants.
At trial and on appeal the defendants contended that Mr. Brodhead was hired as an "at will" employee who could be terminated at any time. We find merit in this contention because our examination of the record convinces us that Mr. Brodhead failed to satisfy his burden of proof that there was a meeting of the minds concerning the alleged five-year term. Mr. Brodhead has also appealed, urging trial court error for failure to award him damages other than salary. All components of Mr. *750 Brodhead's claim for damages flow from the existence vel non of a contract for a term of years, with the exception of the allegedly damaging press release. After reviewing the record, we agree with the trial court that the defendants incurred no liability by publication of the press release.[1]

CONTRACT NEGOTIATIONS
Early in 1988 Mr. Brodhead, a former athletic director of Louisiana State University, was hired by the LSU Boosters Club as a consultant to a Task Force that, along with the SLU Boosters Club, was investigating the return of football to SLU. On April 18, 1988, Mr. Brodhead attended a meeting at a restaurant in Hammond, La. Others present were: Francis Mercante, President of the SLU Boosters; Dr. Crain, defendant; Dr. Smith, defendant; and Gene Rogillio, member of the Board of Trustees. At the meeting Dr. Crain asked plaintiff what it would take to get him as athletic director for SLU. Mr. Brodhead replied that he needed a salary of $72,000.00 per year and a five-year contract. Mr. Brodhead's answer was met with silence. However, after the meeting he and Mr. Mercante "celebrated" the lack of objection to the plaintiff's terms.
The next significant contact between plaintiff and persons concerned with the return of football to SLU was on May 16, 1988, when Mr. Brodhead formally presented his five-year plan for athletics to the Task Force. Shortly after the presentation to the Task Force, according to the plaintiff's testimony, he met with Dr. Smith and Dr. Robert Butler. At that point Dr. Smith delegated to Dr. Butler the task of negotiating terms of a contract with Mr. Brodhead. Thereafter Dr. Butler and Mr. Brodhead discussed the employment. Plaintiff testified,
Dr. Butler and I discussed Seventy-two thousand dollars per year, five year agreement. He said he would take those back to Dr. Smith. Dr. Butler and I met with Dr. Smith after that and they were discussed again. So I felt at that point in time that since I was going to become Athletic Director, that the entire terms of the agreement had been reached.
Although the plaintiff admits that neither Dr. Smith nor Dr. Butler told him he had a five-year contract of employment, plaintiff maintains they told him he had a deal and it needed formalization only. Dr. Smith and Dr. Butler maintain, to the contrary, that whenever the five-year employment contract was mentioned, they responded that they would investigate a method for the university to enter into a multi-year contract.
On June 6, 1988, Mr. Brodhead met with some of the university's administrative staff. Among the topics of discussion was a review of some of the financial aspects of his athletic plan, including the budget for his salary.
Next plaintiff attended a Board of Trustees meeting, where he heard the Board *751 approve his employment at $46,600.00 for one year.[2] Immediately prior to the board meeting, Dr. Butler cautioned Mr. Brodhead not to be alarmed at what he would hear at the meeting.
Plaintiff's argument to the contrary notwithstanding, we find that the parties' meeting of the minds on the salary, evidenced by the fact that Mr. Brodhead was paid at the rate of $72,000.00 per year, does not compel a conclusion that there was a meeting of the minds on the five-year term of employment. Plaintiff emphasizes Dr. Butler's conversation with him before the Board announced that Mr. Brodhead had been hired at $46,600.00[3] for one year. Plaintiff argues that if the Board's quotation of salary did not reflect the true agreement between the parties, so too the quotation of a one-year term did not reflect the agreement between the parties. The problem with plaintiff's argument, by which he attempts to lift himself by his own bootstrap, is that there was no prior agreement to a term of employment. Furthermore, since there was no prior agreement as to a five-year term, and since Mr. Brodhead did not agree to an employment term of one year as announced by the Board, his employment was "at will."[4]
Following the Board meeting, attempts were made to come up with a written contract for the new athletic director. Mr. Brodhead presented the university with a document he adapted from one of his former contracts. Mr. Brodhead's proposal contained a buy-out agreement providing for liquidated damages in the event either employer or employee terminated the employment without cause during a five-year period of time. This is the clause the trial court used as a basis for making an award to Mr. Brodhead of the salary for 50 months of unexpired term.
There is nothing in the record to substantiate the trial court's conclusion that this written proposal represented the prior oral agreement of the parties and a binding agreement for liquidated damages. There is no testimony that a buy-out provision was negotiated prior to Mr. Brodhead's transmittal of the writing to the university. Consequently, the trial court committed manifest error by attributing to Mr. Brodhead's proposal any legal significance other than that of an offer on his part. The record is also devoid of evidence that the university accepted Mr. Brodhead's offer. To the contrary, the university submitted a counter-offer to plaintiff in the form of a written contract draft which included a "tie-in" whereby Mr. Brodhead's employment was contingent upon the success of the plan to raise outside funds to support the football program at SLU. Mr. Brodhead did not accept the university's counter-offer.

CONTRACT OF EMPLOYMENT
As a prerequisite for claiming salaries not paid for work which would have been performed in the future, employees must show that they have been hired for definite time periods. See Jackson v. East Baton Rouge Par. Sch. Bd, 393 So.2d 243 *752 (La.App. 1st Cir.1980). In LSA-C.C. art. 2749 we find the liability of an employer delineated:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
Employees hired without a fixed term are subject to dismissal by their employers at any time, for any reason, without the employers' incurring liability for wrongful discharge. See Jackson v. East Baton Rouge Par. Sch. Bd., supra. Thus, there are two types of contracts for hire: (1) the limited duration contract, and (2) the terminable at will contract. The distinction between the two is that under a limited duration contract the parties have agreed to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without assigning any reason for so doing. See L.S.A.-C.C. arts. 2746-2750; See Terrebonne v. Louisiana Ass'n of Educators, 444 So.2d 206 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984). The period of time which is to be the duration of the contract must be consented to by the parties. The party relying on an alleged contract of employment for a set duration of time has the burden of proof that there was a meeting of the minds on the length of time of the employment. Under facts showing no meeting of the minds, the contract of employment for a set duration of time is void for lack of consent, (LSA-C.C. art. 1927; see Haas v. D'Avanzo, 45 So.2d 104 (La.App.2d Cir.1950)), and what remains is a contract of employment terminable at will.
In the instant case the contracting parties, irrespective of the individuals who entered into negotiations, were Mr. Brodhead and a state agency. Our statutory laws provide the method by which the state agency can manifest its consent to a contract. LSA-R.S. 17:3305 A. provides:
The head of each college and university shall appoint and fix the salaries and the duties of the members of the faculty and administrative and professional staff for the college or university he heads, subject to the recommendation of the president or chief administrative officer of the system and approval of the appropriate management board.
LSA-R.S. 17:3356 states:
Notwithstanding any other provision of law to the contrary, all official actions of each board shall require the favorable vote of nine members.
Thus, Dr. Smith had the authority to appoint Mr. Brodhead, but his authority was limited by the necessity of receiving the recommendation of Dr. Crain and the approval of the Board by a favorable vote of nine members. In the instant case the only Board approval was for a contract for one year, which, as we mentioned previously, was never accepted by plaintiff.
Plaintiff cannot avoid the consequences of the defendant Board's failure to consent to a term of years for the contract; persons negotiating with agencies of the state do so charged with knowledge of the laws and knowledge that the validity of their acts is subject to those laws. See State v. City of Pineville, 403 So.2d 49 (La.1981), wherein the city did not obtain the necessary approval from the State Bond and Tax Board, thus making its written obligation unenforceable. Nor can the plaintiff in the instant case claim recovery pursuant to the theory of unjust enrichment or some other form of quasi-contract, which is available in some cases where the original agreement is unenforceable. See State v. City of Pineville, supra, and cases cited therein. Plaintiff is entitled to no recovery here because he performed no services past the time of termination of his employment. In some circumstances this might appear to be a harsh rule, but not under the instant facts which show an experienced, sophisticated, and knowledgeable plaintiff. Mr. Brodhead had been involved in numerous contracts with various sports organizations, including the athletic department of a Louisiana university. Indeed, *753 Mr. Brodhead approached the bargaining table as a seasoned professional negotiator as compared with the academicians with whom he was dealing.
Accordingly, we find no basis in the record for the trial court's finding that Mr. Brodhead had a contract for a definite term. We reverse that part of the judgment which awarded damages to plaintiff, and cast plaintiff for costs of this appeal.
REVERSED IN PART, AFFIRMED IN PART.
CARTER, J., concurs in the result.
NOTES
[1] The press release reads as follows:

Bob Brodhead has been dismissed as athletic director at Southeastern Louisiana University as part of the university's efforts to cut back athletic administrative costs.
The move came this week as the university also announced layoffs in several other key athletic administrative and coaching positions.
Other positions affected were the associate athletic director for women's athletics, an assistant football coach, the women's volleyball coach, the athletic business manager, and the director of athletic concessions.
University officials said these moves were made in response to last week's mandate by the Board of Trustees for State Colleges and Universities which ordered the university to take immediate steps to reduce athletic expenditures.
Officials said these moves should help stabilize the university's existing athletic program, save all current sports, and at the same time ease budget problems for the remainder of the year.
Brodhead was hired last summer to implement an external fund-raising drive to benefit the entire athletic program and to bring back intercollegiate football, which was eliminated after the 1985 season. The external fund-raising drive, however, fell far short of the budgeted goal. Brodhead had projected raising $700,000 the first year, but collected only $84,000. As a result, the Board of Trustees directed the university to end the efforts to restore football as an intercollegiate sport and to minimize all other expenses of the athletic program, particularly those of an administrative nature.
[2] There is no dispute between the parties that plaintiff was first hired as "interim" athletic director for one month until the beginning of the fiscal year.
[3] Dr. Smith explained the salary figures, as follows: "We planned to offer him a salary of Seventy-two thousand dollars, which would have been from two sources ... Forty-five thousand dollars coming from the university's operating budget, which is essentially monies which is (sic) derived from student tuition revenues, and an additional Twenty-seven thousand dollars which would be raised by Booster contributions or external fees.

. . . . .
There was concern that some members of the Board of Trustees would be unhappy with a salary for the Athletic Director coming from the State Operating Budget, which would be substantially above other Athletic Directors in the State and essentially comparable with the salary of the President of the university."
[4] The defendants offered another reason for the conclusion that Mr. Brodhead was an at-will employee. Dr. Smith explained the one-year "appointment": "[T]he Board of Trustees makes personnel actions for approval of a person in a position during a fiscal year. Mr. Brodhead was approved in exactly the same process in which I am approved, and the Board has always made it abundantly clear to me that I am an at-will employee."