855 So.2d 359 (2003)
Kim SAACKS
v.
MOHAWK CARPET CORPORATION.
No. 2003-CA-0386.
Court of Appeal of Louisiana, Fourth Circuit.
August 20, 2003.
*362 Robert G. Harvey, Sr., Maria Del Carmen Calvo, Harvey Jacobson & Glago, New Orleans, LA, for Plaintiff/Appellee.
Jeffrey A. Schwartz, Audrey N. Browne, Watkins Ludlam Winter & Stennis, P.A., New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES, and Judge TERRI F. LOVE).
WILLIAM H. BYRNES, III, Chief Judge.
In this employment contract case, Mohawk Carpet Corporation ("Mohawk") appeals the trial court's judgment in favor of the plaintiff Kim Saacks that held that the contract was a defined fixed-term employment agreement. We affirm.

Statement of Facts and Procedural History
Mohawk accepted Kim Saacks for a territorial manager position with the corporation. Mohawk's June 19, 2000, letter confirmed the offer of employment. Ms. Saacks's effective date of hire was July 3, 2000. In June 2001, Mohawk notified Ms. Saacks that her position was being eliminated, and her job was terminated.
Ms. Saacks filed this lawsuit, contending that the June 19, 2000, letter constituted a contract for employment for a specific term (eighteen months) and obligated Mohawk to pay Ms. Saacks's salary for the remaining portion of that term from June 2001 to December 2001. Ms. Saacks also sought penalties and attorney fees in connection with her demand for past wages. *363 The disputed clause in the June 19, 2000, letter, which forms the basis of Ms. Saacks's claim, states as follows:
COMPENSATION, You will receive a guaranteed salary of $54,000/year through December 2001. At the end of 2001, if you have hit your territory's quota, you will receive a 10% bonus based on your salary amount. At any point during the first seventeen months, you may convert your salary to a draw advance against commissions. In doing so, you will automatically become eligible to participate in the Bonus Incentive Program.
After a trial on October 7, 2002, the trial court found that the employment agreement was a fixed-term contract. The trial court rendered judgment in favor of Ms. Saacks for past wages in the amount of $10,306 and penalty wages in the amount of $18,692, together with interest and costs.
On October 15, 2002, Ms. Saacks filed a motion to amend judgment to correct errors in calculation of past wages. Ms. Saacks argued that the $10,306 awarded in wages represented the amount that had accrued as of September 18, 2001 (the date that Ms. Saacks brought a rule to show cause). Ms. Saacks submitted that by December 2001, the end of the fixed term contract, the past wages had accrued to the amount of $29,700.
On October 15, 2002, Ms. Saacks also filed a motion for new trial, seeking attorney's fees in connection with the award for past wages. The trial court held a hearing on the motions on November 22, 2002, and rendered judgment on December 9, 2002. The amended judgment awarded Ms. Saacks past wages in the amount of $29,700 and penalty wages in the amount of $18,692, together with interest and costs. Additionally, pursuant to the motion for new trial, the amended judgment granted Ms. Saacks attorney's fees in the amount of $9,625. Mohawk's appeal followed.
On appeal, Mohawk contends that the trial court erred in: (1) concluding that Ms. Saacks carried her burden of proof in providing sufficient evidence that the contract was for fixed-term employment; (2) and (3) assessing penalties against Mohawk based on a finding of bad faith; and (4) amending the original judgment. The plaintiff claims she is entitled to an increase in the attorney's fees for the appeal.

Standard of Review
The reviewing court may not overturn the judgment of the lower court absent an error of law or finding of fact that is manifestly erroneous or clearly wrong. Stobart v. State Through Department of Transportation and Development, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). A lower court's factual findings can be reversed only when: (1) the record reflects that a reasonable factual basis does not exist for the finding of the trial court; and (2) the record establishes that the trial court's finding is clearly wrong. Russell v. Noullet, 98-0816 (La.12/1/98), 721 So.2d 868, 872. The reviewing court is to review the evidence in the light most favorable to the prevailing party. Id. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it even though it is convinced that if it had been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Hennegan v. Cooper/T.Smith Stevedoring Co., Inc., XXXX-XXXX (La.App. *364 4 Cir. 12/30/02), 837 So.2d 96, writ denied XXXX-XXXX (La.4/21/03), 841 So.2d 794. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987).

Fixed-Term Contract
Mohawk argues that the trial court erred in finding that Ms. Saacks presented sufficient evidence to establish that her employment was a fixed-term rather than an "at-will" contract.
Initially at issue in the present case is whether the parties entered into a contract for hire that was a limited duration contract, or a terminable "at-will" contract. Under a limited duration contract the parties have agreed to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without assigning any reason for so doing. La. C.C. arts. 2746-2750; Terrebonne v. Louisiana Ass'n of Educators, 444 So.2d 206 (La.App. 1 Cir.1983), writ denied 445 So.2d 1232 (La.1984).
La. C.C. art. 2747 provides:
Art. 2747. Contract of servant terminable at will of parties
A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
Employees hired without a fixed term are subject to dismissal by their employers at any time, for any reason, without the employers' incurring liability for wrongful discharge. Copeland v. Gordon Jewelry Corp., 288 So.2d 404 (La.App. 4 Cir.1974).
La. C.C. art. 2749 states:
Art. 2749. liability for dismissal of laborer without cause
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
As a prerequisite for claiming unpaid salaries for work that would have been performed in the future, employees must show that they have been hired for definite time periods. Jackson v. East Baton Rouge Parish School Bd., 393 So.2d 243, 245 (La.App. 1 Cir.1980). The party relying on an alleged contract of employment for a set duration of time has the burden of proof that there was a meeting of the minds on the length of time of the employment. Brodhead v. Board of Trustees for State Colleges and Universities, 588 So.2d 748, 752 (La.App. 1 Cir.1992).
Mohawk asserts that absent a contract for a fixed period of time, an employee is terminable "at will," at any time for any cause, or for no cause. Pechon v. National Corp. Service, Inc., 234 La. 397, 100 So.2d 213, 216 (1958). Because of the presumption that employment is "at will," the party alleging a fixed term contract has the burden of proof. Brodhead, supra.
Mohawk claims that its letter of June 19, 2000, confirmed the details of her employment. Citing Weaver v. Purple Shield Life Insurance Co., 356 So.2d 519 (La.App. 1 Cir.1977), and Daybrook Fisheries v. Ketnor, 01-0388 (La.App. 4 Cir. 1/22/03), 839 So.2d 223, Mohawk maintains that the mere expression of an annual salary is insufficient to rebut the presumption that the employment contract was "at-will."
*365 Mohawk contends that there was no evidence that the parties intended to be bound for a certain period of time. Mohawk points out that the plaintiff testified at trial that she did not believe that the June 19, 2000, letter prohibited her from quitting her job during the 18-month period. Ms. Dawn Day testified that when she authored the June 19, 2000, letter, Mohawk did not intend to contract with the plaintiff for a specified time. Ms. Day stated that the letter's expression of a stated salary was meant only to convey to the plaintiff that she would be guaranteed that rate of pay for as long as she was employed by Mohawk.
Mohawk relies on the application for employment executed on July 3, 2000. Page three of the application states the following:
I understand that I have the right to terminate my employment at any time with or without notice, with or without cause, and that the Company has the similar right. I understand my employment by this Company does not guarantee that any position be continued for any length of time or that any job assignment or shift be permanent. I understand that no one other than the President of the Company has authority to make any other agreement.
Mohawk submits that the employment application establishes that the plaintiff's employment was "at will" and Ms. Day did not have the authority to hire the plaintiff.
The plaintiff argues that she presented sufficient evidence to show that her employment contract was for a fixed-term based on the June 19, 2000, letter. The plaintiff testified at trial that she thought she was guaranteed a job for eighteen months.
The plaintiff shows and Ms. Day did not dispute that she and the plaintiff negotiated and reached an agreement for hiring Ms. Saacks over the phone. The June 19, 2000, letter stated: "Congratulations on your acceptance of a Territory Manager position with ... Mohawk....I'm pleased to have you join my team." The plaintiff agrees that her effective date of hire was July 3, 2000, but that she had started working for Mohawk prior to that date. She leased a storage unit with Safeguard on Interstate, I-10 Service Road, and she started receiving carpet samples before the July 3, 2000, date. The plaintiff testified:
I bought another cell phone, hooked up another line too, `cause I only had one incoming line. I leased a storage unit with a company called Safeguard on the interstate, I-10 Service Road, and started receiving samples almost right away, "samples" meaning the carpet book samples, which is what we distributed.
When the plaintiff received the application for employment mailed along with other documents for the plaintiff's signature, she had already started to work for Mohawk.
The plaintiff refers to Roussel v. James U. Blanchard & Co., Inc., 430 So.2d 247 (La.App. 4 Cir.1983), and contends that, to find a fixed term contract, the court should look to the facts and circumstances surrounding the employment and the nature of the employment. In Roussel, this Court found a fixed-term employment contract based on a confirmation letter similar to the letter in the present case. That letter stated:
Congratulations and welcome to James U. Blanchard & Company as a member of our sales staff. I know that this will be a rewarding opportunity both financially and personally.
This will confirm that your compensation will be 10% of gross profit. You will also receive $1500, payable each two *366 week period, as a draw against your future sales, for a six month period. In addition to the terms outlined, you will receive a $4000 payment up front. As an independent contractor you will be responsible for the payment of all income taxes, social security and medical benefits.
In hiring you we feel that you are definitely sales management material and you will be evaluated on that basis, if your performance is up to what we expect, within a six to twelve month period.
* * *

Id., 430 So.2d at 248
This Court found that the parties intended a fixed minimum employment term of six months.
In the present case, in her deposition, Mohawk's representative, Ms. Dawn Day testified that when she negotiated the contract with the plaintiff, it was never Mohawk's intention to guarantee the plaintiff employment for eighteen months. Ms. Day testified that the plaintiff was only guaranteed a specified rate of pay for eighteen months. Ms. Day explained that a new sales territory could take up to eighteen months to become established, and for that reason, the plaintiff was given a guaranteed salary during that start-up period.
When questioned in her telephone deposition, Ms. Day responded:
Q. What is your understanding of the notation of a guaranteed salary of $54,000.00 a year?
A. It meant that she would be guaranteed a salary each month as she was receiving a check based on commissions.
Q. Was it your intent in putting this in the letter to guarantee Ms. Saacks employment through December 2001?
A. No.
* * *
Q. Are you aware of any circumstances during your time at Mohawk Industries where territory managers or any sales representatives had contracts for a specific term of employment?
A. No.
Further, Ms. Day was questioned, and she responded:
Q. What then was the purpose of the guaranteed salary through December of 2001?
* * *
A. When a new sales representative joins a company whether the sales representative be experienced or inexperienced there is the knowledge that it will take that person a certain amount of time to generate business, to generate orders, to ship those orders, and to receive payment for them. In order to help offset what could potentially be months of no commissions and therefore no income, it is standard industry procedure to offer a guarantee of salary not a guarantee of employment for "x" amount of time.
Carol Lowry, Mohawk's regional vice president who replaced Ms. Day, confirmed that no one at the company had ever been given a fixed-term employment contract. Ms. Lowry further testified that the June 19, 2000, letter was in accordance with the standard practice of the company, specifically, that the plaintiff was guaranteed a set salary for the first eighteen months that she worked for the company, but was not guaranteed employment for eighteen months.
On July 3, 2000, the plaintiff signed the application of employment that stated: "I understand my employment by this Company *367 does not guarantee that any position be continued for any length of time or that any job assignment or shift be permanent." However, she had begun working before that date. Although the letter conveyed that only the president had the authority to hire employees, Ms. Day agreed that she offered the plaintiff employment over the phone. The plaintiff reasonably could have believed that Ms. Day had the authority to hire her. She relied on Ms. Day's authority when she began working when she rented the storage area and obtained additional phone equipment before receiving the July 3, 2000, documents.
The parties do not dispute that the plaintiff quit her job with Neptune Communications to work for Mohawk, and that the plaintiff was hired to develop a clientele in a territory that had no prior representation. Ms. Day agreed that 18 months was the minimum time for the plaintiff to develop a clientele. Ms. Day testified that: "Kim was taking on a territory that for all intense [sic] and purposes had had no representation. There was no backlog. So in my view she was starting at ground zero."
The plaintiff testified that she and Ms. Day, representing Mohawk, had negotiated and agreed on a contract for a fixed term of 18 months specifically because the territory would be a difficult one to develop. The plaintiff understood that she had to meet a goal within the period of time, 18 months, which was specified in the contract. The plaintiff testified that she would not have left her previous employment and taken the job with Mohawk if the employment agreement had not been for a guaranteed 18 months.
Mohawk maintains that the plaintiff testified that she was free to leave the job before 18 months; however, the plaintiff testified that she was committed to remain at the job during the 18 months. The plaintiff answered the following questions:
Q. Were you of the impression, Ms. Day [sic], that you were not permitted to quit your job?
A. I was under the impression that I was contracted through December 2001. That was the basis of my job, not this application.
Q. I'll repeat the question. Were you under the impression that you were not permitted to quit your job?
A. Basically I was committed through December 2001, yes.
Q. Did you ever sign any document that said, "I can't quit this job, and if I do quit, I will have to pay some sort of penalty to the company?"
A. I did not sign a document like that.
Q. Were you under the impression that if you did quit, there would be some ramification that would befall you?
A. There was never a consideration to quit, Ms. Schwartz. It was a committed length of time. I was dedicated to that.
Q. I'm not trying to argue with you, Ms. Saacks. I'm just trying to get you to answer my question. Were you under the impression that if you did quit, that there would be some penalty that you would suffer in terms of your relationship with the company?
A. No.
Although there was no penalty, the plaintiff did not testify that she believed she was free to leave her employment at any time. She believed that she was committed for 18 months, the time it would take to develop the territory. It could be interpreted that if there were a penalty negotiated, the plaintiff would have felt that she could leave at any time if she forfeited her salary pursuant to a penalty. Without an agreement as to a penalty, the plaintiff could believe she was obligated to *368 work for a fixed time, 18 months, to develop the territory. The plaintiff testified that she was committed for 18 months.
Mohawk asserts that on July 3, 2000, the plaintiff signed the application for employment document that stated that she had the right to terminate her employment at any time and the company had the similar right. She was not guaranteed any position for any length of time or that the job was permanent. Only the company's president had the authority to make an agreement of employment.
Although the plaintiff signed the form, she believed it was a standard form filled out by all employees but it did not contain the specific terms of employment that were set out in the June 19, 2000 letter confirming her oral agreement with Ms. Day that the plaintiff had been hired for the job that was for a fixed time period of at least 18 months. Although the application for employment form stated that only the president had the authority, this conflicted with the fact that Ms. Day negotiated and hired her. The plaintiff relied on Ms. Day's authority on behalf of the company to make the agreement to hire the plaintiff.
In the interpretation of statutes and contracts, the specific controls the general. Corbello v. Iowa Production, XXXX-XXXX (La.2/25/03), 850 So.2d 686 rehearing granted on other grounds (La.6/20/03), 850 So.2d at 714. In the present case, the provisions of the June 19, 2000, letter specifically set out the terms of employment whereas the July 3, 2000, general form letter does not. The more specific document, the June 19, 2000, letter, controls, and is the document setting out the terms of employment. Further, the plaintiff began working prior to the July 3, 2000 form letter, and relied on the terms of employment in the June 19, 2000, letter.
The very nature of the plaintiff's employment is a corroboration of her testimony that her contract was for a fixed term for 18 months. It was mutually advantageous to both the employer and the employee for the plaintiff to develop a new territory within 18 months. It would have been an advantage to Mohawk for the plaintiff to develop the new territory, which Mohawk's representative agreed would take 18 months. It is not as if Mohawk would get something for nothing. The plaintiff was hired to develop a clientele in a territory that had no prior representation. The June 19, 2000, letter stated: "At any point during the first seventeen months, you may convert your salary to a draw advance against commissions." This wording supports the finding that the plaintiff was committed and had a salary for the first seventeen months.
It was incumbent upon the plaintiff to produce a clientele within 18 months in order to keep her job any longer. The employment was good for at least 18 months. The plaintiff was entitled to the 18-month period to generate the clientele. A reasonable interpretation would be that both parties agreed that she would need 18 months to develop the territory, and her employment contract was for a fixed term of 18 months.
In the Reasons for Judgment, the trial court stated:
Testimony revealed that the parties intended to enter into an employment agreement for at least a certain period of time necessary to develop a clientele in the territory assigned to the plaintiff. The defendant's confirmation letter indicated that the plaintiff was to receive a "guaranteed salary" for a period of eighteen months. Both parties testified that development of the particular territory required approximately eighteen *369 months of sales activity on the part of the plaintiff. [Emphasis added.]
The record reflects that a reasonable factual basis exists for the trial court's conclusion that the plaintiff showed sufficient evidence of a fixed-term contract. The trial court was not clearly or manifestly wrong in finding that the June 19, 2000, letter constituted a fixed-term contract of employment, and that the plaintiff was entitled to the salary for that eighteen months.

La. R.S. 23:631 and 23:632
Referring to Boudreaux v. Hamilton Medical Group, Inc., 644 So.2d 619, 622 (La.1994), Mohawk maintains that it is not liable for penalties and attorney's fees under La. R.S. 23:631 because damages like those sought by the plaintiff Ms. Saacks do not constitute "wages" within the meaning and intent of La. R.S. 23:631 and 23:632. In Boudreaux, Mohawk contends that the Louisiana Supreme Court found that the statute's language attaching liability to an employer who fails to pay wages that are earned by the day, week, or month signifies that only amounts due as wages are contemplated. Therefore, only compensation that is earned during a pay period is considered to be "wages" under the statutes.
La. R.S. 23:631 A(1)(a) provides:
Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation.
La. R.S. 23:632 states:
Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, which ever is the lesser amount of penalty wages.
The Louisiana Supreme Court found that the statutes refer to "wages" and subject the employer to the payment of penalties and attorney fees if the wages are not paid timely in Boudreaux, id. The Supreme Court referred to Stell v. Caylor, 223 So.2d 423, 426 (La.App. 3 Cir.), and stated that not all amounts due by the employer to the employee are contemplated by the statutes, but only amounts due as wages are contemplated.
In Boudreaux, id., the Louisiana Supreme Court looked at the amount of "Compensation on Termination" provided in Section 13 of the employment contract. That section provided for an extra sum of money payable when the contract was voluntarily or involuntarily terminated. The Louisiana Supreme Court found that this additional compensation after termination was not due under the terms of employment but that such compensation was an additional compensation of money payable after termination. Although the payment was to be equal to three times the employee's average monthly income, it was a one time payment and was not subject to a pay period. The additional compensation under Section 13 was not a "wage" within the meaning of La.R.S. 23:631 and 23:632. However, the amount of money the employer owes the employee is compensation due under the terms of employment, and is considered to be a "wage."
In the present case, the amount due from the contract is not an additional compensation payable after termination, as *370 provided under Section 13 of the contract in Boudreaux. Because the amount of money constitutes "wages" under La. R.S. 23:631 and 23:632, the employer would be liable for penalties for failure to pay the amount not later than three days following the date of discharge or resignation.
The trial court properly considered an award of penalties and attorney's fees to the plaintiff as a result of non-payment of the fixed-term employment contract.

Bad Faith Necessary for Award of Penalty Wages
Mohawk contends that the trial court erred in awarding penalty wages to the plaintiff because Mohawk contested the issue in a valid good-faith belief that the plaintiff's employment was "at will."
Statutes that authorize the imposition of penalties, or sanctions, are penal in nature and are to be strictly construed. Consolidated Distributors, Inc. v. United Group of Nat. Paper Distributors, Inc., 32,431 (La.App. 2 Cir. 10/27/99), 743 So.2d 862. A trial court's finding as to a sanctionable violation may be reversed if the record furnishes no evidence to support the finding. Id.
Mohawk asserts that although the trial court interpreted the June 19, 2000, letter to be a fixed-term contract, the plaintiff signed the July 3, 2000, job application form, which created the issue of whether the contract was for an "at-will" or fixed term contract. Mohawk maintains that it was justified in contesting the issue and should not be subject to sanctions. Mohawk submits that the trial court erred in assessing penalties against it where there was no finding of bad faith on the part of Mohawk.
Mohawk avers that to recover penalty wages under La. R.S.23:632, a plaintiff must show that the wages were due and owing, that demand was made, and that the employer did not pay upon demand, citing Hebert v. Ins. Center, Inc., 97-298 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007. Penalties should not be imposed on the employer when it presents a good faith non-arbitrary defense to its liability for unpaid wages. Carriere v. Pee Wee's Equip. Co., 364 So.2d 555 (La.1978). Penalty wages may be awarded where the employer fails to pay the amount that is clearly due. Wyatt v. Avoyelles Parish School Bd., XXXX-XXXX (La.12/4/02), 831 So.2d 906. A determination of whether an employer is in good or bad faith is a factual question subject to the manifest error/clearly wrong standard of review. Harvey v. Bass Haven Resort, Inc., 758 So.2d 264, 268 (La.App. 3 Cir. 2/2/00).
Mohawk argues that there is no indication that the trial court considered whether Mohawk acted in bad faith in not paying Ms. Saacks her alleged unpaid wages. Therefore, Mohawk submits that the appellate court should review the issue de novo and that this Court is not held to the manifestly or clearly wrong standard of review.
The record shows that Mohawk discharged the plaintiff prior to the termination of the employment agreement. Although Mohawk claims that Ms. Day did not have the authority to negotiate with Ms. Saacks and to hire her, the parties do not dispute that Ms. Day negotiated the terms of employment with Ms. Saacks by more than one telephone call, and the follow-up letter dated June 19, 2000 set out the employment terms, including salary.
At trial, Mohawk made the claim that Ms. Saacks had not reached a $750,000 sales quota that had been imposed by Mohawk, and therefore, she had been discharged with cause. The parties do not dispute that the plaintiff had 18 months to *371 develop the territory. Mohawk's claim that the plaintiff did not reach the sales quota before 18 months was a subterfuge for terminating Ms. Saacks and constituted bad faith. The record also indicates that at the time of trial, although issued three weeks prior to trial, Mohawk did not comply with the plaintiff's subpoena, requesting any writing of any nature in connection with the employment and/or termination of the plaintiff. This was another example of Mohawk's failure to proceed in good faith.
Although the trial court did not specifically state that it found that Mohawk was in bad faith, it concluded that: "the penalty damages prayed are reasonable under the facts, given that the plaintiff, pursuant to the terms of the contract was to serve exclusively in the employment of the defendant, thereby precluding her from entertaining other offers of employment." The trial court found that the plaintiff was bound to the contract and could not change employment although Mohawk asserted that it could fire her "at will." This was another example of Mohawk's bad faith. The record supports a reasonable basis for the finding that Mohawk was in bad faith, and the trial court was not clearly wrong in awarding the plaintiff penalty wages.

Trial Court's Award of Attorney's Fees
With respect to the trial court's award of attorney's fees, the plaintiff filed a motion for new trial.
In Buras v. Schultz, XXXX-XXXX (La.App. 4 Cir. 9/18/02), 828 So.2d 649, this Court stated:
When an employee is forced to file suit to recover his unpaid wages, the award of reasonable attorney's fees is mandatory pursuant to La. R.S. 23:632...
A recognized purpose of La. R.S. 23:632 is to foster availability of counsel to workers who have been unlawfully denied earned compensation. The attorney's fee award is to be taxed as costs against the employer. Mitchell v. Turner, 588 So.2d 1305, 1308 (La.App. 2 Cir.1991).

Id. at 651-52.
Even if penalty wages are not due, reasonable attorney's fees are to be awarded for a well-founded suit for any unpaid wages. Glover v. Diving Services International, Inc., 577 So.2d 1103 (La. App. 1 Cir.1991); Blaney v. Hulsey, Harwood & Hulsey, 27,983 (La.App. 2 Cir. 2/28/96), 669 So.2d 661. Unlike penalty wages, courts do not permit equitable defenses to the award of attorney's fees in the event that a "well-founded suit" for wages is filed. Beard v. Summit Institute of Pulmonary Medicine and Rehabilitation, Inc., 97-1784 (La.3/4/98), 707 So.2d 1233. The suit is considered "well-founded" and an award of attorney's fees is mandatory where the employee brings a successful suit and recovers unpaid wages. Cleary v. LEC Unwired, L.L.C., 2000-2532 (La.App. 1 Cir. 12/28/01), 804 So.2d 916. Factors to be considered in determining the reasonableness of attorney's fees include the following: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. Winkle v. Advance Products & Systems, Inc., 98-694 (La.App. 3 Cir. 10/28/98), 721 So.2d 983.
In the present case, considering that the $16,937 award for attorney's fees represents 35 % of the total award of $48,392, the amount awarded for attorney's fees was reasonable.
*372 The trial court was not clearly wrong and did not abuse its discretion in the amount of the award to the plaintiff for penalty wages, plus interest, costs, and attorney's fees.

Motion to Amend Judgment
Mohawk argues that the trial court erred in granting the plaintiff's motion to amend the judgment. Mohawk points out that the original judgment awarded the plaintiff $10,306, which was the amount that the plaintiff prayed for in her petition. Mohawk maintains that there were no mathematical or grammatical errors. The trial court held that its original judgment was wrong because it did not include the full value of the plaintiff's alleged employment contract. Therefore, Mohawk asserts that the amendment was an alteration to the substance of the judgment and constituted an inappropriate invocation of La. C.C.P. art.1951.
La. C.C.P. art.1951 provides that a final judgment may be amended to alter the phraseology of the judgment, but not the substance; or to correct errors of calculation. Where a mistake in the amount for which the judgment is rendered is clearly the result of miscalculation, the judgment may be corrected. Starnes v. Asplundh Tree Expert Co., 94-1647, p. 5 (La.App. 1 Cir. 10/6/95), 670 So.2d 1242, 1245. The plaintiff refers to State v. Star Enterprise, 95-2124 (La.App. 4 Cir. 8/7/96), 691 So.2d 1221, in which this Court held that the trial court's authority to correct errors of calculation did not authorize it to make material changes to the judgment in a use tax dispute by awarding use taxes, attorney's fees, and interest, which were not specified in the original judgment or were entirely new elements of recovery not awarded in the original judgment.
In Bruscato v. Century Ready Mix Corp., 569 So.2d 633 (La.App. 2 Cir.1990), the Second Circuit found that although the trial court lacked the power to amend the final order, the appellate court had the power to amend the judgment in a workers' compensation case, to require the employer and its insurer to pay for the cost of the reclining chair ordered by the employee's physician, after the trial court had inadvertently omitted the requirement from the final judgment.
Just as statutes are subject to interpretation, the same is true about the rulings of courts. In Broussard v. F.A. Richard & Associates, Inc., 98-1167 (3// 17/99), 732 So.2d 578, appeal after remand, 99-10 (La. 3 Cir. 5/5/99), 740 So.2d 156, writ denied, 99-1048 (La.6/4/99), 744 So.2d 625, the Third Circuit held that courts should avoid a construction of a statute which would lead to absurd results; the statute must be interpreted in such a manner as to render its meaning rational, sensible, and logical. Similarly, the ruling of a court should be interpreted to avoid a construction that would lead to absurd results. The ruling should be interpreted in such a manner as to render its meaning rational, reasonable, and logical.
In the present case, in its original judgment, the trial court found that the plaintiff was entitled to be compensated for all wages that she would have received under the contract. The plaintiff was to receive a guaranteed salary of $54,000 per year through December 31, 2001. The plaintiff was terminated on or about June 22, 2001, six months before the expiration of the fixed-term contract. At the time of the plaintiff's rule to show cause on September 18, 2001, requesting a summary proceeding, the plaintiff's past wages at that point had accrued to $10,306. The plaintiff points out that she should receive the following calculation: based on an annual salary of $54,000, her monthly salary was $4,500 multiplied by six months, which *373 equals $27,000. The parties do not dispute that this calculation is correct for the amount included in the remainder of the 18 months.
There is no doubt that the trial court found that the plaintiff, Kim Saacks, was entitled to be compensated for all wages that she would have received for her full term of services, including the time period from June 2001 to December 2001. The plaintiff was entitled to the correct amount for all wages, which included the $450 monthly car allowance that equaled $2,700 for six months. The amended judgment corrected an error in the calculation of the salary owed to the plaintiff for that period. The trial court did not add any new items of recovery besides the salary owed, but corrected the calculation of the amount of salary or wages due to the plaintiff. The trial court clearly intended to award the full amount of the salary or wages due to the plaintiff under the contract. The one item of recovery, i.e., the salary owed under the contract did not change, but the calculation of the amount of the salary due was properly corrected by the trial court pursuant to La. C.C.P. art.1951.

Alternative if Amendment Were Considered a Substantive Change
Further, even in the alternative, if the amendment in the judgment were considered substantive, the proper vehicle for a substantive change in a judgment is the timely motion for new trial, timely appeal or petition or action for nullity. Webster v. Boh Bros. Const. Co., Inc., 603 So.2d 761 (La.App. 4 Cir.1992). The appellate court's usual remedy for an amendment made as to the substance of a judgment is to reverse the amended judgment and reinstate the original judgment. Stephenson v. Nations Credit Financial Services Corp., 98-1688 (La.App. 1 Cir. 9/24/99), 754 So.2d 1011.
In Quinn v. United Services Auto. Ass'n, 576 So.2d 594 (La.App. 4 Cir.1991), this Court found that the evidence indicated that the trial court's intention in granting a new trial on discretionary grounds was only to clarify the earlier damage award in a personal injury action, and thus, the trial court was justified in granting the new trial. Further, although the judge increased the award of damages, this Court found that the judge was clarifying and not amending the judgment.
In Tolmas v. Weichert, 616 So.2d 244 (La.App. 4 Cir.1993), writ denied 620 So.2d 878 (La.1993), the original judgment was erroneously entered in favor of the plaintiff rather than the plaintiff-in-reconvention. This Court held that the correction of the error without contradictory proceedings was improper. This Court reinstated the original judgment but also revised the judgment to comport with the record so as to be in favor of the plaintiff-in-reconvention.
In McCrea v. Mobil Oil Corp., 95-0537 (La.App. 4 Cir. 9/28/95), 662 So.2d 143, the trial court clarified the judgment as transferring only a portion of the lawsuit to a different parish and not the entire lawsuit. This Court held that an exception of venue was interlocutory rather than a final judgment and was not governed by the requirements of La. C.C.P. art.1951. The trial court could correct the judgment on the exception of venue.
Further, in McCrea, this Court stated that: "Article 1971[1] does not require a *374 contradictory hearing on the issue of whether to grant a new trial when the trial judge does so on his own motion. Borras v. Falgoust, 285 So.2d 583, 587 (La.App. 4th Cir.1973)." Id., 662 So.2d at 148. In addition, this Court found that even if the statute governing an amendment of final judgments may have applied to the amended judgment granting the exception to venue, and constituted a substantive change, the trial court's actions made it clear that the court, ex proprio motu, ordered a new trial to correct the original judgment. The amended judgment was valid after a subsequent conference in which the trial court heard the opposing parties' complaints about the judgment and reaffirmed the amended judgment as its intended disposition of the exception to venue.
In Davenport v. Amax Nickel, Inc., 569 So.2d 23, 27-28 (La.App. 4 Cir.1990), writ denied 572 So.2d 68 (La.1991), this Court stated:
We note a matter not addressed by the parties. The trial judge substantively amended the original judgment without a motion for new trial. The original judgment (November 13, 1989) granted summary judgment in favor of Amax Nickel, Inc. but did not include defendant John Buckhannon. On November 17, 1989 an amended judgment dismissed the suit against Buckhannon. On November 30, 1989 Davenport appealed both the November 13 and the November 17 judgments.
La.C.C.P.Art.1951 provides:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
The addition of a party to a judgment is a change of substance and not of phraseology which can only be accomplished by motion for a new trial or on appeal. Teague v. Barnes, 519 So.2d 817 (La.App. 5th Cir.1988). The usual remedy of the appellate court is to vacate the amended judgment and reinstate the original judgment. Teague, supra. Schexnayder v. Schexnayder, 503 So.2d 104 (La.App. 5th Cir.1987).
La.C.C.P.Art. 2164 permits an appellate court to "render any judgment which is just, legal and proper upon the record on appeal." Here, although the parties neither moved for a new trial nor questioned the amended judgment in this Court, plaintiff appealed both judgments.
The record is complete and we deem it just and proper to vacate the amended judgment and reinstate the original judgment, and to amend the original judgment to include summary judgment in favor of defendant John Buckhannon.
This Court noted that in the interest of justice, where a contradictory hearing had been held in the trial court, the two judgments had been appealed, and the record was complete, the appellate court could amend the original judgment to include the dismissal of another defendant, a substantive change.
In the present case, in its reasons for judgment dated December 9, 2002, rendered on the same date as the amended judgment, the trial court stated: "This matter came before the Court on November 22, 2002 for a hearing on a Motion to Amend Judgment and a Motion for New Trial filed on behalf of plaintiff, Kim Saacks, and was subsequently taken under advisement." After a contradictory hearing, *375 the trial court considered both motions at the same time and then amended the calculation of the past due wages due to the plaintiff in the amended judgment.
The December 9, 2002 judgment granted the plaintiff's motion for new trial, as well as the motion to amend judgment. Therefore, because the plaintiff filed a motion for new trial, and a contradictory hearing was held, the trial court did not err in amending the calculation of the wages owed to the plaintiff even if the amendment were considered to be a substantive change.
The trial court properly granted the plaintiff's motion to amend the judgment to correct errors in calculation along with the motion for new trial.

Attorney's Fees for Appeal
The plaintiff asserts that she is entitled to increased attorney's fees for the appeal.
The plaintiff notes that in Sam v. Jhane Home Health Care Services, Inc., 95-0081 (La.App. 4 Cir. 6/07/95), 657 So.2d 559, this Court granted an increase of attorney's fees in the amount of $1,552.05, which an increase of $750, or approximately 50 % of the total award. In that case, the employee/appellee answered the appeal. In the present case, the plaintiff did not appeal or answer the appeal.
An increase in attorney's fees should be awarded to a party who has already been awarded attorney's fees by the trial court and then successfully defends an appeal. Becht v. Morgan Buildings & Spas, Inc., XXXX-XXXX (La.App. 1 Cir. 6/21/02), 822 So.2d 56, writ granted on other grounds 2002-2047 (La.11/8/02), 828 So.2d 1117, affirmed, 2002-2047 (La.4/23/03), 843 So.2d 1109; Stutes v. Rossclaire Const., Inc., 575 So.2d 466, 471 (La.App. 3 Cir.1991). However, generally, the appellate court will not consider the appellee's arguments for modification of the judgment, absent appeal or answer to the appeal. La C.C.P. art. 2133; King v. Sewerage and Water Board of New Orleans, 99-0382 (La.App. 4 Cir. 11/24/99), 747 So.2d 200, writ denied 99-3588 (La.2/18/00), 754 So.2d 967. Taylor v. BASF Wyandotte, XXXX-XXXX (La.App. 1 Cir. 9/28/01), 805 So.2d 235.
In the present case, the employee/plaintiff/appellee refers to Hughes v. Cooter Brown's Tavern, Inc., 591 So.2d 1334, 1338 (La.App. 4 Cir.1991), writ denied 594 So.2d 1318 (La.1992), in which this Court stated:
Plaintiff requests that additional attorney's fees be awarded against defendant for defense of the appeal. If a suit under LSA R.S. 23:632 is determined to be well-founded in the trial court, it does not lose that status on appeal simply because the plaintiff fails to recover all the relief he sought. Pohl v. Domesticom, Inc., 503 So.2d 125 (La.App. 5th Cir.1987). Therefore, we award an additional $1500 for attorney fees incurred by this appeal, to be taxed as costs against the defendant.
In Hughes, the employer/defendant/appellant appealed. The opinion does not show whether or not the employee/plaintiff/appellee either appealed or answered the appeal.
The employer's request for additional attorney's fees made in the employer's brief on appeal by the worker's compensation plaintiff was not adequate and could not be considered where the employer did not appeal or answer the appeal in Welborn v. Ashy Enterprises, Inc., 504 So.2d 120 (La.App. 2 Cir.1987). See also City of Jennings v. Deshotel, 99-1232 (La.App. 3 Cir. 2/2/00), 758 So.2d 269, writ denied XXXX-XXXX (La.4/20/00), 760 So.2d 1157; Perkins v. Rapides Parish Police Jury, 98-1899 (La.App. 3 Cir. 5/5/99), 738 So.2d 607, writs denied 99-1798 (La.10/1/99), 748 *376 So.2d 451, 455; Hebert v. CIGNA, 93-1400 (La.App. 3 Cir. 5/25/94), 637 So.2d 1221; Schillace v. Channell Shopping Partnership, 623 So.2d 45 (La.App. 1 Cir.1993).
In Winkle v. Advance Products & Systems, Inc., supra, the Third Circuit held that a former employee, who brought an action for unpaid wages, was not entitled to attorney's fees for preparation and presentation of the appeal, where the employee neither answered the appeal nor appealed.
In the present case, without an appeal or an answer to the appeal filed by the employee/plaintiff/appellee, the plaintiff's arguments for additional attorney's fees for the appeal cannot be considered.
Accordingly, the judgment of the trial court is affirmed. Although the plaintiff's request for attorney's fees for the appeal is not considered, costs of the appeal are assessed against Mohawk.
AFFIRMED.
NOTES
[1] La. C.C.P. art.1971 provides:

Art. 1971. Granting of new trial
A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.