288 So.2d 404 (1974)
Bernard S. COPELAND
v.
GORDON JEWELRY CORPORATION.
No. 5931.
Court of Appeal of Louisiana, Fourth Circuit.
January 8, 1974.
Rehearing Denied February 6, 1974.
Writ Refused March 15, 1974.
*405 David Gertler, New Orleans, for plaintiff-appellant.
Stone, Pigman, Walther, Wittman & Hutchinson (David L. Stone), New Orleans, for defendant-appellant.
Before BOUTALL and SCHOTT, JJ., and BAILES, J., Pro Tem.
SCHOTT, Judge.
This litigation commenced with a "Petition For A Writ of Mandamus" to compel defendant to sell and transfer to plaintiff shares of its stock pursuant to a stock option plan. Among various exceptions filed by defendant one of unauthorized use of summary proceedings was maintained with plaintiff given the right to amend his pleadings. Thereupon plaintiff converted his case into a suit for "A Writ of Mandatory Injunction" to require defendant to sell the stock to him. Defendant filed Declinatory Exceptions of lack of jurisdiction over the person and improper venue together with an answer. From a judgment overruling the exceptions and decreeing a mandatory injunction in favor of plaintiff defendant has appealed.
In connection with jurisdiction and venue plaintiff, who is domiciled in the State of Alabama, contends that as to defendant, which is a Delaware corporation, our Courts have jurisdiction by virtue of our "Long-Arm" statute and particularly *406 LSA-R.S. 13:3201(a) which provides as follows:
"A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from the nonresident's
(a) transacting any business in this state;"
The question of whether the defendant was "transacting any business in this State" is a factual issue, the determination of which must rest upon the peculiar circumstances of the case. Aucoin v. Hanson, 207 So.2d 834 (La.App. 3rd Cir. 1968) and Fidelity Credit Company v. Bradford, 177 So.2d 635 (La.App. 3rd Cir. 1965).
Defendant has its principal office in Houston, Texas, and is not qualified to do business in the State of Louisiana. It owns all of the stock of Leonard Krower & Company, Inc., a jewelry and general merchandise store on Canal Street in New Orleans. Plaintiff was employed to work at Krower in July, 1965, after he had been contacted at his Alabama home by a representative of defendant. He was brought to defendant's Houston office at defendant's expense and there the terms of his employment were negotiated between representatives of defendant and himself as to salary and the manner in which it was to be paid. He worked at Krower as the manager of its diamond and jewelry department until October, 1969, when his services were terminated.
Defendant's position is that its contact with Louisiana is limited to the ownership of the stock of the Krower corporation and such is not sufficient to constitute transacting business within this state under the rationale of Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 and Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179.
But while mere ownership of the stock of a subsidiary corporation may not be sufficient to make the parent amenable to the jurisdiction of the subsidiary's state under its "Long-Arm" statute, the record of the instant case reveals that defendant did far more in Louisiana than simply owning the stock of the Krower Company, bringing into focus the following dicta from Steinway v. Majestic Amusement Co., supra:
"Where a nonresident corporation is organized for the very purpose of holding and controlling the stock of a resident corporation and thus manages and directs the internal affairs of the resident corporation, courts have disregarded the corporate entity and treated it as the alter ego of the nonresident corporation for the purposes of service of process."
See also Massey Ferguson Limited v. Intermountain Ford Tractor Sales Company, 10 Cir., 325 F.2d 713.
In the instant case defendant utilized committees of its personnel at the Houston office to prepare catalogues advertising Krower's merchandise (the catalogue was the backbone of Krower's business); to decide upon the hiring and firing of Krower's manager personnel; and to control the purchasing and pricing of Krower's merchandise. One of the executives of defendant was the regional supervisor of the Krower store and in that capacity made regular inspections of the Krower facility. The other top executives of defendant also made periodic visits to the Krower store. Not only was plaintiff's original salary agreed upon in Houston by defendant's representatives but subsequent adjustments or increases in the salary, commission and drawing arrangement were negotiated with and agreed to by defendant's personnel. Plaintiff's salary, as well as the salary of the other Krower employees, were paid by another corporation which was a wholly owned subsidiary of defendant. From the facts we can infer that all of the policy, procedures and operations of Krower were controlled tightly and totally by defendant through its executive offices and committees. Thus, defendant *407 was transacting business in the State of Louisiana through Krower and was subject to the jurisdiction of our Courts under the "Long-Arm" statute.
As to venue, LSA-R.S. 13:3203 provides:
"A suit on a cause of action described in R.S. 13:3201 may be instituted in the parish where the plaintiff is domiciled or in any parish of proper venue under any provision of Louisiana Code of Civil Procedure other than Art. 42."
Plaintiff bases venue on LSA-C.C.P. Art. 77 which provides:
"An action against a person having a business office or establishment in a parish other than that where he may be sued under Article 42, on a matter over which this office or establishment has supervision, may be brought in the parish where this office or establishment is located."
Those provisions clearly apply to defendant since under LSA-R.S. 13:3203 venue cannot be based on Art. 42 of the Code of Civil Procedure and the business office involved is the Krower store in Orleans Parish. Defendant's contention that LSA-R. S. 13:3202 has the effect of preventing plaintiff from availing himself of the "Long-Arm" statute has no merit. Plaintiff's cause of action is based on an alleged breach of contract between him and defendant which arose when defendant terminated his employment at the Krower store where plaintiff had maintained his employment so as to derive the benefits of the stock option plan. Thus, the cause of action arose out of defendant's transaction of business in Louisiana where these matters took place.
Accordingly, the trial judge correctly overruled exceptions to the jurisdiction and venue and properly proceeded to a trial on the merits of the case.
In October, 1965, some three months after plaintiff's employment commenced, he received the first of three stock option plans under which he could purchase Class A stock of the defendant corporation in increments of 20% of a fixed total on each of five consecutive anniversaries at a fixed price per share. In March, 1969, plaintiff sustained an injury to his back while in the course and scope of his employment by defendant, and having had continuous difficulties with his back, in September, 1969, he was advised by his manager to remain home for a couple of weeks so as to rest and recover in time for the forthcoming Christmas rush season. But a few days after he had begun this period of rest at his home he received a telephone call from the manager of Leonard Krower informing him that his services with the company were terminated as of October 4, 1969, on instructions from the Houston office. That termination date was just 21 days short of the anniversary date for the exercise of options under the three agreements.
Plaintiff did not allege or attempt to prove that the termination of his employment was for the purpose of frustrating his exercise of the stock options, but he bases his case on principles of equity and equitable estoppel to the effect that he had taken the position with Leonard Krower in the first place in partial consideration of the existence of and his right to participate in the option plan; that he worked for Leonard Krower on a year to year basis; and that in effect he had earned the right to exercise the options which would have been exercisable on October 25, 1969. In reasons for judgment the trial judge found that there was no agreement to the effect that plaintiff would be hired by the year; that plaintiff was not discharged from employment for cause; and that while an employer can terminate the services of an employee at any time plaintiff did have certain rights under his stock option agreement of which he could not be deprived. Defining these rights the trial judge held as follows:
"The purpose of a stock option agreement is to stimulate the efforts of key *408 employees and to strengthen the desire of such employees to remain in the employment of the Corporation.
"In short, a stock option is not a uni-lateral agreement to be terminated at the whim or caprice of the employer. Mr. Copeland had 21 days to go before his rights would accrue to purchase 132 shares of stock at $5.40 per share. He worked and earned the right to purchase 11/12ths of the 132 shares at $5.40.
"As to the second option, Mr. Copeland worked from March 17, 1969 until September 20, 1969, a total of 6 months. He is entitled to ½ of the second option rights. That is, a total of 44 shares at $7.28 per share.
"In short, it is the opinion of the Court that an employee has certain equitable rights, under the Stock Option Plan, to purchase stock, at a set price, if his services are terminated without cause."
An analysis of his reasons reveals that the trial judge attached much significance to the question of whether plaintiff was discharged with or without cause. In effect, he concluded that defendant failed to prove that its action was justified and from that conclusion gave equitable relief to plaintiff under the stock option agreement. We do not find that the facts justify the conclusion that plaintiff's employment was terminated at defendant's "whim or caprice" or even as a matter of law that defendant was required to justify its action.
Plaintiff was employed in a responsible capacity as the manager of the jewelry department of a large retail outlet and his knowledge of the diamond and jewelry business, and his ability as a salesman, was never questioned by anyone. But it is clear that plaintiff did not approve of some of defendant's policies in running Krower, which policies were considered by defendant to be extremely important. Defendant's top executives were on several occasions contacted by plaintiff with repeated complaints about policies which these executives had adopted. There was clearly some friction between plaintiff as manager of the jewelry department and the general manager of the store, as well as some other employees in the store, and for these reasons defendant decided to discharge plaintiff from its employment. Far from being hasty with this decision, plaintiff's conduct and his possible discharge were being discussed for six months before the decision was made.
As a matter of law there were no restrictions on defendant's right to terminate plaintiff's employment. The trial judge found that there was no contract between the parties for a fixed term of employment. That being the case, the following from 53 Am.Jur.2d, Master and Servant, § 43 is pertinent:
"When the employment is not for a definite term and there is no contractual or statutory restriction upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause he chooses, without incurring liability."
With respect to the stock option agreement, it is significant that this contract was not entered into with the plaintiff until after he had already commenced his employment. While he testified that this was a primary consideration when he accepted the employment there is testimony from defendant's representative that the primary concern at the time was his salary and commission rate with the option agreement being of secondary consideration. In any event, the option agreement under its terms provides that the employee must be in the employ of Krower in order to exercise the options as they become exercisable under the terms of the agreement, and it contains the following provisions: "Nothing herein contained shall at any time be deemed to limit or restrict any right of the corporation by which optionee is employed to terminate his employment."
There is nothing in this agreement which suggests that the increments of 20% *409 are to be pro-rated for the period of the year in which plaintiff was employed. On the contrary, the agreement is clear that it is exercisable only in units of 20% and only if the plaintiff was employed at the time the option became available. Since his employment had been terminated and since defendant had a right under the law and under this contract to terminate that employment, plaintiff was deprived of no rights.
During oral argument before this Court we questioned whether plaintiff was entitled to the remedy of specific performance or injunctive relief even if he were to prevail. But the parties have now stipulated that should plaintiff prevail, he is entitled to specific performance. In view of the stipulation and the conclusion we have already reached on the merits it is unnecessary to discuss this facet of the case.
Accordingly, the judgment of the trial court is reversed and set aside, the demands of the plaintiff are rejected, and plaintiff is to pay all costs including costs of this appeal.
Reversed and rendered.