PATRICIA RIVET MURRAY, Judge.
 

 _jjln these consolidated cases, the defendants, Darren Schmolke and Schmolke Construction, Inc., appeal two judgments. In the first judgment, the trial court awarded past due wages and penalties pursuant to La. R.S. 23:631 and 23:632 to the plaintiff, Nicole Jeansonne, and determined that she was also entitled to reasonable attorney’s fees and costs. In the second judgment, the trial court determined the amount of the attorney’s fees and costs to be awarded. For the reasons that follow, we amend both judgments and affirm as amended.
 

 FACTS AND PROCEEDINGS BELOW
 

 Darren Schmolke is the sole owner and operator of Schmolke Construction, Inc. [hereinafter “SC”], which is in the business of general contracting/ home reconstruction. In the aftermath of the August 29, 2005 landfall of Hurricane Katrina, Ms. Jeansonne and Mr. Schmolke entered into a verbal agreement whereby Ms. Jean-sonne would manage reconstruction projects she brought to SC in exchange for fifty percent of the profits generated by those projects. In January, 2007, Mr. Schmolke terminated the agreement. On April 5, 2007, Ms. Jeansonne |2filed suit against Mr. Schmolke and SC alleging that Mr. Schmolke had terminated her employment and had withheld wages due to her in violation of La. R.S. 23:631. The plaintiff also alleged that Mr. Schmolke had engaged in behavior that should result in the disregard of the corporate form of SC, therefore making any judgment in her favor executable against both SC and Mr. Schmolke personally. Finally, the plaintiff alleged that, pursuant to La. R.S. 23:631(B), she was entitled to have her claim for unpaid wages, penalties and attorney’s fees handled as a summary proceeding in accordance with Louisiana Code of Civil Procedure article 2592.
 

 Defendants filed a dilatory exception of unauthorized use of summary proceedings on the basis that Ms. Jeansonne was not an employee but an independent contractor, and as such was not entitled to make a claim pursuant to La. R.S. 23:631. The exception and the issue of the plaintiffs employee status were tried by means of a contradictory hearing held October 4, 2007. On October 15, 2007, the trial court rendered judgment declaring the plaintiff to be an employee of defendants and denying the exception.
 

 
 *353
 
 Trial on the remaining issues was held June 23-24, 2008. On August 25, 2009, the trial court rendered judgment awarding Ms. Jeansonne past due wages in the amount of $29, 977.03, a statutory penalty in the amount of $20, 885.40, reasonable attorney’s fees, and costs against both SC and Mr. Schmolke. In accompanying written reasons for judgment, the trial court stated that Ms. Jeansonne was owed wages equivalent to twenty-five percent of the profits on eight projects, two of which were completed and six of which were ongoing at the |stime of Ms. Jeansonne’s termination.
 
 [1]
 
 In addition, the trial court noted that it had imposed a statutory penalty under La. R.S. 23:632 because Mr. Schmolke had failed to provide any good faith basis for his withholding of the wages due Ms. Jeansonne. Finally, the trial court explained the factual basis for its piercing of the corporate veil to hold Mr. Schmolke personally liable.
 

 The defendants appealed the August 25, 2009 judgment. During the pendency of the appeal, the trial court rendered a second judgment in response to plaintiffs motion to set attorney’s fees and costs. In this judgment, rendered October 26, 2009, the trial court awarded $22, 888.09 in attorney’s fees and $4,392.79 in costs. The defendants also appealed the second judgment, and we have consolidated the two appeals in this court.
 

 Plaintiff filed an answer to the appeal seeking judicial interest from the date of demand and additional attorney’s fees.
 

 ISSUES
 

 Defendants first contend that the trial court erred by finding that Ms. Jeansonne was an employee of defendants rather than an independent contractor.' Alternatively, defendants argue that the trial court erred in: determining the amount owed to Ms. Jeansonne at the time of her termination pursuant to La. R.S. 23:631; assessing penalties under La. R.S. 23:632; calculating the amount of penalties owed; piercing the corporate veil; calculating the amount of attorney’s fees Rawarded; and calculating the amount of costs awarded. Conversely, in answer to the appeal Ms. Jean-sonne argues the trial court erred by awarding insufficient, attorney’s fees and by failing to award judicial interest.
 

 For purposes of discussion, we have divided these issues into seven subject areas, namely: (1) Employee status, (2) Wages, (3) Penalties, (4) Attorney’s fees, (5) Piercing the corporate veil, (6) Costs, and (7) Interest.
 

 (1) Employee Status
 

 The trial court determined, both in a pretrial ruling denying defendants’ exception and again after trial, that Ms. Jean-sonne was an employee of defendants within the terms of La. R.S. 23:631, thereby entitling her to have her claims adjudicated by means of summary proceedings. The statute provides, in pertinent part:
 

 Discharge or resignation of employee; payment after termination of employment
 

 A. (l)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other
 
 *354
 
 employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.
 

 ⅝ ⅜ :¡s ⅜ ⅜
 

 B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.
 
 [2]
 

 | ¿Defendants argue that the trial court erred by finding that Ms. Jeansonne was an employee rather than an independent contactor. The above-referenced statute contains no definition of the term “employee.” The distinction between an employee and an independent contractor is a factual determination that must be decided on a case-by-case basis.
 
 Tate v. Progressive Security Ins, Co.,
 
 08-0950, p. 2 (La.App. 4 Cir. 1/28/09), 4 So.3d 915, 916 (citations omitted). As such, it is subject to the manifest error standard of review.
 
 Id.
 

 In
 
 Hickman v. Southern Pacific Transpon Co.,
 
 262 La. 102, 262 So.2d 385, 390-91 (1972), the Louisiana Supreme Court described the nature of an independent contractor relationship:
 

 It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor’s business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
 
 Amyx v. Henry & Hall,
 
 227 La. 364, 79 So.2d 483 (1955).
 

 Recognizing that the principal test was the employer’s control over the work, the
 
 Hickman
 
 Court emphasized that it is not the supervision and control actually exercised which is significant, but whether, from the nature of the relationship, the employer has the right to exercise such control.
 
 Id.
 
 More recently, the Court explained:
 

 The essence of the [employer-employee] relationship is the right to control. The four primary evidentiary factors considered in deciding the above are—
 

 |R1. Selection and engagement;
 

 2. Payment of wages;
 

 3. Power of [dismissal;
 

 4. Power of control.
 

 Hillman v. Comm-Care, Inc.,
 
 01-1140, p. 8 (La.1/15/02), 805 So.2d 1157, 1162 (quoting
 
 Alexander v. J.E. Hixson & Sons Fu
 
 
 *355
 

 neral Home,
 
 44 So.2d 487, 488 (La.App. 1st Cir.1950)). Additionally, the Court noted that none of these factors is controlling, that the totality of the circumstances should be considered, and that the burden of proof is on the party seeking to establish an employer-employee relationship. 01-1140, p. 9, 805 So.2d at p. 1163.
 

 In the instant case, the following evidence was presented at the hearing on employee status and at trial. Several months after Hurricane Katrina struck New Orleans in 2005, Ms. Jeansonne, who was doing roofing work on her own, approached Mr. Schmolke about doing roofs for SC. She and Mr. Schmolke entered into a verbal agreement whereby Ms. Jeansonne would receive sixty percent of the profits and SC would keep forty percent from any roofs Ms. Jeansonne did. Ms. Jeansonne testified that she did not have a contractor’s license, which was not required to do roofing work. Ms. Jean-sonne testified that at some point later on, she and Mr. Schmolke modified their arrangement when she began to do home reconstruction, remodeling and demolition projects for SC, which did require her to use SC’s contractor’s license. At that point, they verbally agreed to split the profits and losses fifty-fifty on any projects for which Ms. Jeansonne served as the project manager. There was never a written agreement or contract between them. Ms. Jeansonne was paid after each project was completed, once all the bills had come in and the amount of profit could be determined. With |7Mr. Schmolke’s acquiescence, Ms. Jeansonne brought in her friend, Martha Huckabay, who also served as a project manager for SC, and the two women agreed to split evenly between them the project manager’s fifty percent of any project assigned to either of them. Therefore, Ms. Jeansonne was paid twenty-five percent of the total profits on her own projects and on Ms. Huckabay’s projects. Ms. Jeansonne was paid by means of a federal form 1099; no taxes were withheld from her checks.
 

 According to her testimony, Ms. Jean-sonne solicited many of the jobs for which she served as project manager, and she also got some jobs as a result of Mr. Schmolke’s advertising. Mr. Schmolke testified that he determined which project manager was assigned to which job, and he also decided which jobs SC would accept. As project manager, Ms. Jeansonne met with the homeowners, took measurements and prepared the costs estimate, presented the SC contract for the homeowners’ signature, chose and hired all subcontractors, ordered the materials, and procured the necessary permits using SC’s license. She had SC business cards with her name printed on them. The homeowners signed the contract with SC and paid SC. All subcontractors were paid by SC, and all invoices for materials were also made out to and paid by SC. Ms. Jeansonne did not have her own independent insurance.
 

 Ms. Jeansonne was responsible for supervising all the work on her projects until completion. She had no set schedule. She determined her own hours and the days on which she worked. She was not required to work every day. During the time she worked for SC, she also bought and “flipped” several houses on her own and/or in a joint venture with her brother. According to her testimony, no one supervised her or exercised day-to-day control over her in performing her work for |8SC. She testified that she was ultimately responsible for the job being done correctly.
 

 Approximately January 19, 2007, Mr. Schmolke terminated his business arrangement with Ms. Jeansonne. The reason for his decision was disputed at trial. Ms. Jeansonne testified that Mr. Schmolke fired her in retaliation for her having end
 
 *356
 
 ed
 
 the
 
 romantic relationship that existed between them. Mr. Schmolke testified that he terminated their business relationship because he became unhappy with Ms. Jeansonne’s work. He testified that he had received phone calls from homeowners complaining about Ms. Jeansonne’s work; in addition, he stated that Ms. Jeansonne had continued to use her brother as a subcontractor on her projects despite Mr. Schmolke’s objection, and that he suspected Ms. Jeansonne and her brother had been embezzling money from SC clients.
 

 Applying the law to the evidence in the instant case, we cannot say the trial court was manifestly erroneous or clearly wrong in its determination that Ms. Jean-sonne was an employee rather than an independent contractor. Defendants argue that the primary indicator of employee status, the employer’s control over the work performed, is absent from this case. However, as the Supreme Court noted in
 
 Hickman, supra,
 
 the pertinent question is not whether control is actually exercised, but whether, from the nature of the relationship, the right to control exists. 262 So.2d at 391. In the instant case, although Mr. Schmolke did not exercise control over Ms. Jeansonne’s work, several pieces of evidence indicate that he did have the
 
 right
 
 to do so. For example, he had the right to turn down projects solicited by Ms. Jeansonne; she testified that on one particular occasion, Mr. Schmolke made her return a deposit she had accepted from a homeowner because Mr. Schmolke did not want the job. Ms. Jeansonne also admitted that Mr. |<|Schmolke could completely halt work on any of her projects by failing to pay the subcontractors, and that he had the option of stopping the work at any time in order to protect the contractor’s fee if he believed it was in jeopardy. Although Ms. Jeansonne testified that he did not have the right to select the subcontractors used on her jobs, Mr. Schmolke nevertheless stated that her continued use of a subcontractor he disapproved of was one of the reasons he terminated their business agreement.
 

 Another factor relied upon by defendants as an indicator of independent contractor status is that SC’s payments to Ms. Jeansonne were reported to the federal government on a form 1099 rather than on a W-2, with no taxes being withheld. In this particular case, however, the trial court could have reasonably discounted the significance of this factor because the evidence indicated that Mr. Schmolke issued 1099’s not only to project managers, but also to other employees who were not paid on a commission basis. For instance, the evidence showed that Amy Gjenaro, who testified she was the bookkeeper for SC, was also issued a 1099 even though she was paid $25.00 per hour.
 

 Finally, in making its determination, the trial court also could have reasonably considered that because she lacked a general contractor’s license, Ms. Jeansonne would not have been able to do these projects independently of SC. Moreover, because the homeowners contracted with SC and SC maintained liability insurance, it was SC, not Ms. Jeansonne, who bore the legal responsibility for her performance.
 

 Under the circumstances presented in this case, we find no manifest error in the trial court’s determination that Ms. Jean-sonne was an employee within the | interms of La. R.S. 23:631, and was therefore entitled to have her claims under that statute tried by means of summary proceedings.
 

 (2) Wages
 

 According to the Reasons for Judgment, the trial court’s award of $29, 977.03 in past due wages consisted of Ms. Jean-sonne’s twenty-five percent commission on seven projects assigned to her at the time
 
 *357
 
 of her termination, which projects the court referred to by street name:
 

 (1) Charlotte Street — $6,936.91;
 

 (2) Canal StreeL-$470.25;
 

 (3) Marshall Foch — $3,420.98;
 

 (4) Music Street — $3,485.77;
 

 (5) Walker Street — $3,858.15
 

 (6) Bancroft Drive — $5,458.38
 

 (7) St. Roch Avenue — $6,346.59
 

 The court determined that the first two of these, Charlotte Street and Canal Street, were completed by the time of Ms. Jean-sonne’s termination, and the remaining five were completed with net profits to SC between the date of Ms. Jeansonne’s discharge and the date of trial. The trial court awarded no amount to Ms. Jean-sonne on an eighth project, Colony Road, which resulted in a net loss to SC. The trial court’s determinations in this regard are factual findings subject to the manifest error standard of review. See, e.g.,
 
 Saacks v. Mohawk Carpet Corporation,
 
 03-0386, p. 3 (La.App. 4 Cir. 8/20/03), 855 So.2d 359, 363.
 

 Defendants contend that the trial court committed manifest error in determining the amount of wages owed Ms. Jeansonne under La. R.S. 23:631. Specifically, defendants argue that the trial court incorrectly awarded Ms. [n Jeansonne “future” wages even though she was an “at will” employee, rather than an employee hired for a definite time period. Defendants also contend the amount awarded did not constitute the “amount then due” Ms. Jeansonne at the time of her termination because under the terms of her employment, Ms. Jeansonne was entitled to be paid only for those projects that were completed by the time she was discharged. Alternatively, defendants contend the trial court erred as to SC’s total net profit on the Bancroft Drive project, which the court stated to be $21,833.39; according to defendants, the evidence showed the actual net profit to be $5,676.41, which would substantially reduce the commission awarded Ms. Jean-sonne for that project. Finally, defendants argue the trial court should have deducted from the amount awarded twenty-five percent of SC’s net loss on the Colony Road project. We address each argument in turn.
 

 “Future" Wages
 

 Relying on
 
 Saacks v. Mohawk Carpet Corp.,
 
 03-0386 (La.App. 4 Cir. 8/20/03), 855 So.2d 359, the defendants assert that because Ms. Jeansonne was an “at will” employee, she was not entitled to claim any unpaid wages for projects that were not completed at the time of her termination. An “at will” employee is one that was not hired for a fixed time period; such an employee is subject to dismissal by his employer at any time, for any reason, without the employer incurring liability for wrongful discharge.
 
 Id.,
 
 p. 4, 855 So.2d at 364 (citing
 
 Copeland v. Gordon Jewelry Corp.,
 
 288 So.2d 404 (La.App. 4 Cir.1974)). Conversely, in the case of a limited duration employment contract, the parties have agreed to be bound for a certain period during which the employee is not free to leave without assigning cause nor is the employer free to dismiss the employee without a reason.
 
 Id.
 
 (citing La. C.C. arts. 2746-2750);
 
 Terrebonne v. Louisiana ⅛¾Ass’n of Educators,
 
 444 So.2d 206 (La.App. 1 Cir.1983). As a prerequisite for claiming unpaid wages for work that would have been performed in the future, an employee must show that he has been hired for a definite time period.
 
 Id.,
 
 p. 5, 855 So.2d at 364 (citing
 
 Jackson v. East Baton Rouge Parish School Bd.,
 
 393 So.2d 243, 245 (La.App. 1 Cir.1980)). In the
 
 Saacks
 
 case, we affirmed the trial court’s holding that the plaintiff had entered into a written, fixed-term contract of employment for eighteen months and therefore was entitled to the remainder of her salary
 
 *358
 
 for that period, even though her position had been eliminated twelve months after she had begun working.
 
 Id.
 

 The facts of the instant case are clearly distinguishable from those of
 
 Saacks.
 
 We agree with defendants that Ms. Jeansonne was not hired for a fixed time period, and therefore qualifies as an “at will” employee. However, considering the verbal agreement between Mr. Schmolke and Ms. Jeansonne, we do not find that any part of the amount awarded to Ms. Jeansonne constituted “future” wages. With regard to the projects that remained unfinished at the time of her discharge, Ms. Jeansonne did not seek payment for work she was to perform in the future; instead, she sought payment for work she had already performed, in major part, but was prevented from completing. According to Ms. Jeansonne’s testimony, the bulk of her work on each project — that is, soliciting the job, meeting with the homeowners, taking the measurements, preparing the specifications and the contract, getting it signed, choosing and hiring the subcontractors, ordering the materials — occurred at the project’s inception. Because as project manager she did none of the physical labor, her only remaining responsibility was to supervise or “manage” the project until its completion. Therefore, as the trial court indicated in its Reasons for Judgment, Ms. Jeansonne’s payment of a percentage of the |1sprofits upon completion of each project was analogous to a commission. Commissions are considered wages for purposes of La. R.S. 23:631-32.
 
 Lorentz v. Coblentz,
 
 600 So.2d 1376, 1378 (La.App. 1 Cir.1992) (citing
 
 Potvin v. Wright’s Sound Gallery, Inc.,
 
 568 So.2d 623 (La.App. 2 Cir.1990)); see also,
 
 Hess v. Pembo,
 
 422 So.2d 503 (La.App. 4 Cir.1982).
 

 Because Ms. Jeansonne sought her agreed-upon commissions rather than wages for work that was to be performed in the future, we find
 
 Saacks
 
 to be inapplicable. We therefore reject defendants’ argument as to “future” wages.
 

 Payment for Projects Not Yet Completed
 

 Defendants next argue that Ms. Jeansonne’s commissions on projects that were not completed at the time of her termination do not qualify as amounts “then due under the terms of employment” as used in La. R.S. 23:631. Defendants contend that because Ms. Jeansonne agreed to be paid after each project had been completed, no payment was due her for the unfinished projects, which included all the projects except for Charlotte Street and Canal Street.
 

 The facts of the instant case are unique. Although, as we have stated, Ms. Jean-sonne’s payments were more akin to commissions than to any other form of wages, the amount of each commission could not be determined until the particular project had ended and the amount of SC’s profit or loss had been determined. Therefore, Ms. Jeansonne and the other SC project managers were not paid until after final completion of each project.
 
 [3]
 
 According to Ms. Jeansonne’s testimony, she and Mr. Schmolke had never discussed how she would be paid if she left or was terminated before a job was completed. She further testified that she would |l4never willingly have walked away from an unfinished job; however, after her discharge, Mr. Schmolke did not allow her to go to the sites of any SC jobs. Ms. Jeansonne testified she assumed that Ms. Huckabay had taken over supervising the jobs. Accord
 
 *359
 
 ing to the testimony of Mr. Schmolke and of his bookkeeper, Ms. Huckabay completed some of the projects, and Mr. Schmolke himself oversaw the others until completion. However, it was undisputed that Mr. Schmolke never paid Ms. Huckabay more than twenty-five percent of the profits from any project for which Ms. Jeansonne was awarded twenty-five percent by the trial court.
 

 Considering the particular facts of the instant case, we cannot say the trial court committed manifest error by awarding Ms. Jeansonne her twenty-five percent commission on the five projects she had begun that were not completed before her termination.
 

 Bancroft Drive Profit
 

 Alternatively, defendants contend there was no evidence to support the trial court’s determination that SC’s total profit from the Bancroft Drive project amounted to 21,833.21. After reviewing the record, we agree that the trial court’s use of this figure is clearly wrong. Amy Gjenaro testified that the Bancroft Drive project was completed a few months prior to trial, with the homeowners agreeing to do the remaining work on the punch list themselves. Ms. Gjenaro identified Exhibit “M,” the SC Profit and Loss [“P & L”] Statement dated June 19, 2008 covering the project, which was completed in June, 2008; that P & L Statement shows a net income of $5, 676.41. Mr. Schmolke testified that although the initial projected profit from Bancroft Drive was $36,533.13, there were substantial subcontractors’ overruns that the homeowners were forced to pay. He stated that the project had ended with the homeowners and subcontractors in litigation with 11Beach other, and $5676.41 remaining in SC’s account. Ms. Jeansonne did not dispute that SC’s net profit from the Bancroft Drive project was $5676.41, but testified that she would be entitled to twenty-five percent of that amount. She makes no counter argument in her appellee brief to support the trial court’s use of the $21,833.21 figure. It is apparent from our review of the record that the trial court took that figure from Exhibit “K,” an earlier P
 
 &
 
 L Statement, showing that as December 4, 2006, the net income on the Bancroft Drive project was $21,833.21. However, because the parties’ agreement was that Ms. Jeansonne would be paid twenty-five percent of SC’s net profit as determined upon completion of the project, the June 19, 2008 P & L Statement controls.
 

 Accordingly, we find that the trial court committed manifest error by awarding Ms. Jeansonne $5458.38, which is twenty-five percent of $21,833.21, on the Bancroft Drive project. We reduce that portion of the award to $1419.10, which is twenty-five percent of $5676.41.
 

 Colony Road Project
 

 Finally, defendants argue that the trial court committed manifest error by failing to deduct from Ms. Jeansonne’s award twenty-five percent of SC’s loss on the Colony Road project. Mr. Schmolke testified that the homeowners on Colony Road were dissatisfied and therefore fired SC in April, 2007, resulting in a net loss of approximately $7,200.00, which he wrote off. Ms. Gjenaro confirmed that SC had a net loss of $7,216.36, as reflected by the P & L Statement. She recalled that the project involved the construction of a cabana, and that the homeowners called the SC office frequently attempting to get in touch with Ms. Jeansonne while she was serving as the project manager. Ms. Jeansonne testified that SC’s loss- on the project was Mr. Schmolke’s fault because he made no attempt to collect from the | lfihomeowners. In the Reasons for Judgment, the trial court judge indicated that he did not deduct $1804.09 (twenty-five percent of the
 
 *360
 
 loss on the Colony Road project) from Ms. Jeansonne’s award because at the time of her discharge, the Colony Road account had a positive balance sheet; he therefore determined that the net loss was the result of SC’s subsequent failure to monitor the amounts owed by the homeowners. The trial court also reasoned that defendants’ $1804.09 setoff “was extinguished by” Mr. Schmolke’s payment of $5,000.00 to a particular subcontractor who had admitted to having overbilled SC for work performed.
 

 However, these factors are irrelevant to a determination of the amount owed Ms. Jeansonne pursuant to the parties’ mutual agreement. Pursuant to La. R.S. 23:631, the discharged employee is owed the amount due to him “under the terms of employment,” which in the instant case means under the parties’ agreement. According to the testimony of both Ms. Jean-sonne and Mr. Schmolke, they agreed that Ms. Jeansonne was to share in a percentage of the profit or loss from each project as determined upon the completion of the project. There was absolutely no evidence of any intent on the part of either party that this agreement could be modified based upon the fault of either party in causing a loss. Nor is it relevant that an unfinished project appeared to be profitable at the time Ms. Jeansonne was terminated, if in fact that project ended in a loss to SC.
 

 Accordingly, we find that the trial court’s failure to deduct from Ms. Jean-sonne’s award twenty-five percent of SC’s loss on the Colony Road project is clearly wrong. We therefore reduce the award by $1804.09.
 

 | i7Therefore, in response to the aforementioned assignments of error, the trial court’s award of $29,977.03 in wages is reduced to $24,133.66.
 
 [4]
 

 (3) Penalties
 

 By this assignment of error, defendants dispute the $20,885.40 in penalties the trial court awarded Ms. Jeansonne pursuant to La. R.S. 23:632, which provides:
 

 Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
 

 The trial court based the amount of penalties for this failure to pay upon the form 1099 issued to Ms. Jeansonne for the year 2006, which was the last full year she worked for SC given that Mr. Schmolke terminated her in January, 2007. The court determined an average daily rate of pay of $232.06 by dividing the $58,017.25 in total wages shown on the form 1099 by 250 to represent the normal number of working days in a calendar year; then the court multiplied the average daily pay by ninety
 
 *361
 
 to arrive at the penalty of ninety days wages authorized by the statute.
 

 A claimant seeking to recover penalties and/or attorney’s fees under La. R.S. 23:632 must establish the following three factors: (1) that wages were due and owing; (2) that demand for payment was made where the employee was customarily paid; and (3) that the employer did not pay upon demand.
 
 Becht v. Morgan Bldg. & Spas, Inc.,
 
 02-2047, p. 4 (La.4/23/03), 843 So.2d 1109, 1112. Being penal in nature, La. R.S. 23:632 must be strictly construed, and its provisions yield to equitable defenses.
 
 Stall v. Professional Divers of New Orleans, Inc.,
 
 99-262, p. 7 (La.App. 5 Cir. 8/31/99), 739 So.2d 1005, 1009. When a bona fide dispute exists over the amount of wages due, an employer’s failure to pay is not an arbitrary refusal and no penalties will be awarded.
 
 Id.
 
 A trial court’s determination of whether an employer is arbitrary or in bad faith for purposes of imposing penalty wages is a question of fact and is, therefore, subject to the manifest error standard of review.
 
 Loup v. Louisiana State School for the Deaf,
 
 98-0329, p. 6 (La.App. 1 Cir. 2/19/99), 729 So.2d 689, 693.
 

 It is undisputed that Ms. Jeansonne made both an oral and written demand for wages due at the time of her termination, and that defendants refused to pay her any amount and have persisted in their refusal. Defendants first contend that the trial court erred by assessing penalties because the jurisprudence indicates that although commissions are considered “wages” for purposes of La. R.S. 23:631, they generally are not used in determining an employee’s “daily rate of pay” for purposes of calculating penalty wages under la. R.S. 23:632.
 
 Schuyten v. Superior Systems, Inc.,
 
 05-2358 (La.App. 1 Cir. 12/28/06), 952 So.2d 98; 107-108. See also:
 
 Hess v. Pembo,
 
 422 So.2d 503, 508 (La. App. 4 Cir.1982);
 
 Potvin v. Wright’s Sound Gallery, Inc.,
 
 568 So.2d 623, 628 (La.App. 2 Cir.1990);
 
 Howser v. Carruth Mortgage Carp.,
 
 476 So.2d 830, 836 (La.App. 5 Cir.1985). Defendants also urge that the exclusion of commissions from the calculation of penalty wages is appropriate because penalty statutes such as La. R.S. 23:632 must be strictly construed. Additionally, defendants argue that their failure to pay Ms. Jeansonne | iaany amount of wages should be excused because they had a good faith dispute as to whether any wages were owed. Finally, defendants argue that Ms. Schmolke failed to put forth any evidence as to the number of days she worked or her daily rate of pay, making the calculation of penalties impossible, and that the trial court’s use of her prior year’s wages as shown on her 1099 was improper.
 

 Addressing defendants’ first argument, we note that none of the cases they cite for the proposition that commissions generally are not included in the calculation of the statutory penalty has circumstances analogous to those of the instant case, in which the employee, Ms. Jeansonne, was paid
 
 solely
 
 by commission. Instead, the cases relied upon by defendants involve employees who were paid commission(s)
 
 in addition to
 
 a salary or an hourly, weekly, or monthly wage. We therefore do not accept these cases as authority for denying Ms. Jeansonne penalties under La. R.S. 23:632. We also do not believe that our obligation to strictly construe that statute requires us to completely deny penalties in the instant case on the sole basis that there is no obvious method of calculating them. The fact that Ms. Jeansonne did not work a set schedule of days or hours should not prevent her from receiving the penalties to which she is entitled under the statute for Mr. Schmolke’s arbitrary refusal to pay her any of her commissions, even those on the
 
 *362
 
 two projects he admitted were completed at the time of her discharge. In arguing that Mr. Schmolke had a good faith dispute as to whether these amounts were owed, defendants contend he believed that Ms. Jeansonne was attempting to charge him for work performed by her brother as a subcontractor. However, the trial court unequivocally rejected this contention and held that defendants failed to prove the existence of any setoff that would justify Mr. IgnSchmolke’s refusal to pay Ms. Jean-some any amount at all. We find no manifest error in this determination. Moreover, considering the particular circumstances of this case, we cannot say the trial court erred by calculating the penalties based upon an average daily wage derived from Ms. Jeansonne’s total earnings from SC in the calendar year preceding her January 2007 termination. For these reasons, we decline to disturb the trial court’s award of penalties.
 

 (4) Attorney’s Fees
 

 Defendants contend that the trial court’s award of $22,888.09 in attorney’s fees is excessive. The plaintiff, in response, argues that trial court’s award of attorney’s fees is reasonable pursuant to La. R.S. 23:632, but that the amount should be increased to include attorney’s fees for certain post-trial motions in the trial court and for the defense of this appeal.
 

 Unlike penalty wages, the jurisprudence has not recognized equitable defenses to the award of attorney’s fees in the event that a “well-founded suit” for wages is filed.
 
 Beard, supra.
 
 A “well-founded suit” is defined as one in which the employee is successful in recovering unpaid wages.
 
 Cleary v. LEC Unwired, L.L.C.,
 
 00-2532 (La.App. 1 Cir. 12/28/01), 804 So.2d 916. When an employee brings a “well-founded suit,” an award of attorney’s fees is mandatory.
 
 Id.
 
 Stated otherwise, “[w]hen an employee is forced to file suit to recover his unpaid wages, the award of reasonable attorney’s fees is mandatory pursuant to La. R.S. 23:632.”
 
 Buras v. Schultz,
 
 02-0628, p. 3 (La.App. 4 Cir. 9/18/02), 828 So.2d 649, 651.
 

 In the instant case, Ms. Jeansonne submitted evidence attached to her motion for attorney’s fees documenting 144.5 hours spent by her attorney, as well as the L contingency fee contract she signed stipulating that, in the event of an appeal, her counsel would receive forty-five percent of any judgment she was awarded. She argues that, using a figure of $200.00 per hour, the trial court could have reasonably awarded $28, 900.00, or approximately six thousand dollars more than the amount it did award for attorney’s fee. We agree that the trial court’s award is not unreasonable and is supported by the record.
 

 In addition, the plaintiff seeks an increase in the award of attorney’s fees to cover the costs of numerous post-trial motions and of defending the instant appeal. The plaintiff contends the award of attorney’s fees should be doubled to cover these costs.
 

 In
 
 Saacks v. Mohawk Carpet Corp.,
 
 03-0386, p. 25, 855 So.2d at 375, this Court stated: “An increase in attorney’s fees should be awarded to a party who has already been awarded attorney’s fees by the trial court and then successfully defends an appeal.”
 
 Id.
 
 (citations omitted). We noted, however, that the appellant court generally does not consider making such an award in favor of an appellee unless the appellee has filed an answer to the appeal.
 
 Id.
 
 As Ms. Jeansonne has answered the appeal in the instant case, we conclude that she is entitled to an increase in the amount of attorney’s fees to cover the defense of this appeal. However, in keeping with the strict construction
 
 *363
 
 of La. R.S. 23:632, we decline to award her any additional attorney’s fees for post-trial activity that occurred in the district court. Accordingly, we amend the award of attorney’s fees to include an additional $2,000.00 for the defense of this appeal, making the total award $24,888.09.
 

 |
 
 m(5) Piercing the Corporate Veil
 

 By this assignment of error, defendants contend the trial court erred as a matter of law by piercing the corporate veil to hold Mr. Schmolke personally liable to Ms. Jeansonne. According to the Reasons for Judgment, the trial court concluded, based upon Mr. Schmolke’s pattern of conduct, that he used his company as his alter ego. As this court has noted, the alter ego doctrine, which evolved after the creation of limited liability entities such as corporations, allows a court to hold the individual shareholder(s) liable for the corporation’s wrongdoing, usually in situations involving fraud or deceit practiced by the shareholder(s).
 
 Scott v. American Tobacco Company, Inc.,
 
 04-2095, p. 8 (La. App. 4 Cir. 2/7/07), 949 So.2d 1266, 1274 (citing
 
 Riggins v. Dixie Shoring Company, Inc.,
 
 590 So.2d 1164, 1168 (La.1991)). This Court continued:
 

 Another basis for piercing the corporate veil is when the shareholders disregard the requisite corporate formalities to the extent that the shareholders are no longer distinct from the corporate entity.
 
 Id.; Gordon v. Baton Rouge Stores Co.,
 
 168 La. 248, 121 So.2d 759 (1929).
 

 There are several non-inclusive factors a court may use to determine whether to apply the alter ego doctrine: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) under-capitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings.
 
 Riggins, supra; Manning v. United Medical Corp. of New Orleans,
 
 04-0035, p. 9 (La.App. 4 Cir. 4/20/05), 902 So.2d 406, 412-13.
 

 Id.,
 
 pp. 8-9, 949 So.2d at 1274-75.
 

 Citing the above-listed factors, the trial court found plaintiff had proved that Mr. Schmolke was the sole owner, officer and shareholder of SC, a corporation which he directed at his sole discretion and which observed no corporate formalities. SC shared one employee, Ms. Gjenaro, and office space with another of Mr. Schmolke’s businesses, Green Acres Towing. Additionally, the trial court l^found Mr. Schmolke had utilized SC and its bank account for his personal use, including reimbursing family members for personal purchases and administering the funds for the construction of his personal residence. The trial court also relied upon the uncon-tradicted testimony of Galon Durand, a subcontractor who worked on building Mr. Schmolke’s home as well as other projects for SC, that Mr. Schmolke had asked him to shift costs for work done on Mr. Schmolke’s personal home onto other jobs Mr. Durand was doing for SC. Finally, the trial court believed Ms. Jeansonne’s testimony that Mr. Schmolke had terminated her employment by SC because she had ended the personal romantic relationship between her and him.
 

 The defendants argue that none of these factors provides a sufficient basis for piercing the corporate veil. They also argue that Mr. Schmolke did use personal funds he had obtained through a bank loan to build his residence, but merely deposited those funds into SC’s account.
 

 However, in deciding whether to pierce the corporate veil, the totality of the circumstances is determinative.
 
 Rig-
 
 
 *364
 

 gins, supra,
 
 at 1169 (citations omitted). Moreover, the factual findings and credibility determinations made by the trial court with regard to this issue cannot be disturbed in the absence of manifest error. We find no manifest error in the trial court’s factual determinations. We agree with defendants that none of these factors, standing alone, would constitute sufficient evidence to justify piercing the corporate veil. Nevertheless, considering the co-existence of all of them, we conclude that the trial court did not err by piercing the corporate veil in the instant case. We therefore reject this assignment of error.
 

 124(d)
 
 Costs
 

 By this assignment of error, defendants contend that the trial court’s award of $4,392.79 in costs must be reduced to $562.70 because it includes reimbursement for items not provided for by law. La. C.C.P. article 1920 provides that unless the judgment provides otherwise, costs are to be-paid by the party cast in judgment; however, the court may render judgment for costs against any party, as it deems equitable. La. R.S. 13:4533 provides:
 

 The costs of the clerk, sheriff, witness’ fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
 

 A trial court has great discretion in awarding costs and can only be reversed on appeal upon a showing of an abuse of that discretion.
 
 Watters v. Department of Social Services,
 
 08-0977, p. 49 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1162. Nevertheless, Louisiana jurisprudence has recognized that only costs provided for by positive law are taxable against the party cast, and that the types of costs recoverable are narrowly defined by statute.
 
 Watters, supra,
 
 08-0977, p. 50, 15 So.3d at 1162 (citations omitted). Pursuant to La. R.S. 13:4533, the costs of depositions used at trial, which means introduced and accepted into evidence, are recoverable; as a corollary, the costs of depositions not used at trial are not taxable as costs.
 
 Id,
 
 p. 51,
 
 15
 
 So.3d at 1162 (citations omitted). Examples of litigation expenses that are outside the scope of La. R.S. 13:4533 and therefore are not taxable as costs include duplication costs of documents and/or reports not used at trial, as well as postage and telephone charges.
 
 Id
 
 (citations omitted).
 

 In the instant case, the trial court awarded the plaintiff the amount of costs she sought in her motion, which was supported by a list of specific expenses. |¾ Reviewing that list in the record, we find that the majority of the expenses are not taxable as costs under Louisiana law. These include, but are not limited to: private investigator fees; fees for legal support services; copying costs for documents not introduced as evidence at the trial; costs for depositions not used at trial; filing and service of process fees for a separate, consolidated petition by plaintiff alleging fraud, upon which plaintiff did not prevail; court run fees; mailing fees; and fees paid to the Orleans Parish Recorder of Mortgages and Office of Notarial Archives. We therefore find that the trial court abused its discretion by assessing an excessive amount of costs, and we reduce the amount of costs awarded to $1,000.00.
 

 (7) Judicial Interest
 

 Both the August 25, 2009 judgment and the October 26, 2009 judgment are silent as to judicial interest. In her answer to the appeal, the plaintiff seeks judicial interest from the date of demand. Plaintiffs petition in the instant case does not request or pray for interest. However, relying on
 
 Southern Marine Sales, Inc.
 
 
 *365
 

 v. Matherne,
 
 05-181 (La.App. 5 Cir. 11/29/05), 915 So.2d 1042, plaintiff contends this court should award her interest based upon the request in her petition for “other such legal and/or equitable relief as the Court deems appropriate.”
 

 As the Louisiana Supreme Court has stated:
 

 In order to obtain interest on an award, a litigant must pray for interest unless interest is allowed by law. Louisiana Code of Civil Procedure article 1921 provides: “Interest in the judgment shall be awarded as prayed for or as allowed by law.” The “as allowed by law” language has been frequently interpreted to refer to judicial interest in tort cases.
 
 See
 
 LSA-R.S. 13:4203.
 

 Smith v. Quarles Drilling Co.,
 
 04-0179, p. 5 (La.10/29/04), 885 So.2d 562, 565-66. In
 
 Smith,
 
 the Supreme Court reversed the appellate court’s holding that interest was due on the attorney’s fees portion of a worker’s compensation judgment that |26was silent as to interest. The Supreme Court reasoned that the worker’s compensation law, in La. R.S. 23:1201.3, provides for interest on compensation awards but does not so provide for interest on statutory penalties or attorney’s fees. The Court therefore held that the plaintiff was not entitled to interest on the award of attorney’s fees as there was no prayer for interest in the plaintiffs petition.
 

 In the instant case, Ms. Jeansonne’s action for past-due wages, penalties and attorney’s fees was filed pursuant to La. R.S. 23:631 and 632. Neither statute contains a provision for interest. The Fifth Circuit case upon which Ms. Jeansonne relies,
 
 Southern Marine Sales v. Matherne, supra,
 
 involves the breach of a commercial lease, not a claim for wages under the above-referenced statutes. However, in
 
 Danel v. Knek,
 
 490 So.2d 282 (La.App. 3 Cir.1986), the Third Circuit declined to award interest on penalties and attorney’s fees awarded pursuant to La. R.S. 23:632 in the absence of a prayer for interest in the petition. Analogously, we decline to award judicial interest in the instant case where the plaintiffs petition lacks a prayer for interest and both the trial court’s judgments are silent as to interest.
 

 CONCLUSION
 

 Accordingly, for the reasons stated, we amend the August 25, 2009 judgment to reduce the amount of past due wages awarded to $24,133.66. We amend the October 26, 2009 judgment to increase the award of attorney’s fees to $24,889.09, and to reduce the award of costs to $1,000.00. In all other respects, the judgments of the trial court are affirmed.
 

 AMENDED AND AFFIRMED AS AMENDED.
 

 [1]
 

 . Although the original agreement between Ms. Jeansonne and Mr. Schmolke called for a 50/50 split of the profits and/or losses on each of her jobs, the undisputed testimony at trial showed that Ms. Jeansonne had later brought Martha Huckaby to SC, and at that time, the two women had agreed to split the fifty-percent project manager's commission on all projects assigned to either of them. Therefore, Mr. Schmolke was paying each of them a twenty-five percent commission, and after Ms. Jeansonne’s termination, he continued to pay Ms. Huckaby only a twenty-five percent commission.
 

 [2]
 

 . La. C.C. P. art. 2592 provides that summary proceedings may be used for trial of certain matters.
 

 [3]
 

 . The evidence did show that Ms. Huckabay, also a project manager, on at least one occasion, had received an "advance” in her wages, which amount was later deducted from the commission she was paid after the project had been completed.
 

 [4]
 

 . This figure represents a reduction of the award on the Bancroft Drive project from $5458.38 to $1419.10 (a deduction of $4039.28), plus a deduction of $1804.09 to account for the loss on the Colony Road project, equaling a total deduction of $5843.37 from the original award.