| | | |
|---|---|---|
| MICHAEL CALDWELL | * | NO. 2021-CA-0667 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| LOUISIANA ENERGY | * | |
| SOLUTIONS, LLC | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-05162, DIVISION "F-14"
Honorable Jennifer M Medley,
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge
Tiffany Gautier Chase)

John A. Venezia
VENEZIA & ASSOCIATES (APLC)
757 St. Charles Avenue
Suite 302
New Orleans, LA 70130

Julie O'Shesky
VENEZIA & ASSOCIATES (APLC)
757 St. Charles Avenue
Suite 302
New Orleans, LA 70130


COUNSEL FOR PLAINTIFF/APPELLANT


Bernard Louis Charbonnet, Jr.
LAW OFFICE OF BERNARD L. CHARBONNET, JR. APLC
One Canal Place
365 Canal Street, Suite 1155
New Orleans, Louisiana 70130

David M. Fink
LAW OFFICE OF BERNARD L. CHARBONNET, JR., APLC
One Canal Place
365 Canal Street, Suite 1100

New Orleans, Louisiana 70130

COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**April 20, 2022**

This appeal arises from a suit to recover unpaid wages. Michael Caldwell was hired by Louisiana Energy Solutions, LLC, (hereinafter "LES") as a laborer on a project in New Orleans. LES paid Mr. Caldwell the prevailing wage for a laborer. Mr. Caldwell alleges that after approximately one week of work, he began to perform the more specialized and higher-paying work of an electrician. After his work on the project was completed, Mr. Caldwell sent a demand letter to LES for the difference between the laborer's wage he received and the higher wage of an electrician. The owner and manager of LES, Kim Poree, refused to pay. Mr. Caldwell subsequently filed a petition for wages, penalty wages, attorney's fees, and request for summary proceedings. After a hearing, the trial court denied Mr. Caldwell's petition, holding that it did not find evidence to support that Mr. Caldwell's classification changed from that of a laborer to an electrician. It is from this judgment that Mr. Caldwell now appeals.

We find that the record contained conflicting testimony and a lack of corroborating circumstances capable of demonstrating that Mr. Caldwell worked as

an electrician. Therefore, the trial court did not commit manifest error in holding that the evidence presented did not support a classification change from laborer to electrician. We also hold that Mr. Caldwell is unable to recover penalty wages because LES paid the wages it owed him as a laborer and acted in good faith. Lastly, we hold that Mr. Caldwell cannot recover attorney fees for this unpaid wages suit, as such fees are only recoverable in well-founded suits and Mr. Caldwell's suit was unsuccessful.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mr. Caldwell first became acquainted with Mr. Poree through work on a separate project from the one at issue in this case. After becoming acquainted, Mr. Poree hired Mr. Caldwell as a laborer for LES on a public works project at the Orleans Parish Juvenile Justice Center/Youth Study Center. LES was engaged by an electrical subcontractor to complete electrical work for the Orleans Parish Juvenile Justice Center/Youth Study Center. Mr. Caldwell worked on the project for approximately five months and was paid the prevailing wage for a laborer, $13.09 per hour.

Mr. Caldwell alleges that after roughly a week on the job, he began to work as an electrician by installing light fixtures. The prevailing wage for an electrician is $41.23 per hour. Mr. Caldwell alleges that he worked as an electrician for 543.5 hours. After the project ended, Mr. Caldwell sent a demand letter to LES seeking wages in the amount of $15, 532.02 for the electrical work he allegedly undertook. This monetary demand corresponds to the difference between the amount Mr.

Caldwell was paid as a laborer, $6,876.49, and the amount he claims he should have been paid as an electrician, $22,408.51. Mr. Poree refused to pay those wages and Mr. Caldwell subsequently filed a petition for wages, penalty wages, attorney's fees, and request for summary proceedings.

The trial court conducted a hearing on Mr. Caldwell's petition and request for summary proceedings. During the hearing, Mr. Caldwell testified that prior to his employment with LES, he earned an Electrical Technology Certificate from Delgado Community College, but he did not hold an electrician's license. He stated that Mr. Poree hired him as a laborer at a wage of $13 per hour, but that he had performed some electrical work in the past for higher wages.

Mr. Caldwell stated that Mr. Poree informed him that Larry Reeves, an electrician, would be his project supervisor and to follow Mr. Reeves's instructions. Mr. Caldwell averred that Mr. Reeves began directing him to perform electrical work by installing lights in the property and instructed him to photograph project blueprints to facilitate his installation of lights. Mr. Caldwell further testified that Mr. Poree visited the project site at least ten times and saw him installing lights a few times, but instructed him not to let anyone "catch him" doing so.

Mr. Caldwell testified that he eventually realized he was working as an electrician and asked Mr. Poree for a raise. He alleged that he showed Mr. Poree his qualifications to perform electrical work, but that Mr. Poree declined to give him a raise. Mr. Caldwell did not provide any documentation of this conversation

3

outside of his own testimony. Mr. Caldwell also stated that Mr. Reeves was aware of his request to Mr. Poree to change job functions, but did not witness the request being made.

Mr. Reeves confirmed that Mr. Caldwell did perform some electrical work, but stated that Mr. Caldwell did so on his own initiative in order to learn how to be an electrician. Mr. Reeves also testified that it appeared Mr. Caldwell acted out of a desire to prove himself capable of performing an electrician's work. Mr. Reeves confirmed that Mr. Caldwell took photographs of blueprints to facilitate his work, sometimes on his own, and sometimes at the direction of Mr. Reeves. He stated that the electrical work Mr. Caldwell performed consisted of electrician helper work, a status short of a full electrician.

Mr. Reeves also testified that he did not have the authority to change Mr. Caldwell's job functions from a laborer to an electrician. Mr. Reeves stated that, to his knowledge, Mr. Poree had not directed Mr. Caldwell to undertake electrical work. Mr. Reeves testified that Mr. Caldwell had complained that his job functions were exceeding that of a laborer and that he had encouraged Mr. Caldwell to assemble paperwork to become an electrician helper. He testified that he heard Mr. Poree and Mr. Caldwell talking about the latter's school certificates. In response to an inquiry from the court, Mr. Reeves stated that the certificate Mr. Caldwell held was not equivalent to an electrician's license. Instead, Mr. Reeves stated that the certificate illustrated that Mr. Caldwell had studied "basic subjects for theory."

4

Mr. Poree testified that he hired and instructed Mr. Caldwell to perform the work of a laborer and that he did not learn that Mr. Caldwell was installing light fixtures until the project was complete. Mr. Poree stated that he and Mr. Caldwell had discussed the latter's desire to apprentice as an electrician in the future, but not in the context of this project.

After hearing this testimony, the trial court denied Mr. Caldwell's petition. In its reasons for judgment, the trial court indicated that it did not find evidence to support that Mr. Caldwell's job classification changed from that of a laborer to that of an electrician. Mr. Caldwell now appeals this judgment.

## DISCUSSION

### *Standard of Review*

This Court has summarized the appropriate standard of review in analyzing the factual findings of a trial court:

> Appellate courts review the trial court's factual findings with the manifest error/clearly wrong standard of review. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La. 4/14/04), 874 So. 2d 90, 98. This precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Id.* "[A] reviewing court may not merely decide if it would have found the facts of the case differently." *Id.* "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So. 2d 880, 882 (La. 1993).

*Gordon v. Gordon*, 16-0008, pp. 2-3 (La. App. 4 Cir. 6/8/16), 195 So. 3d 687, 688-89.

5

In circumstances where "two permissible views of the evidence exist," the appellate court may only set aside a trial court's factual findings if the trial court committed manifest error or was clearly wrong. *Lakewood Property Owners' Ass'n v. Smith*, 17-0382, p. 3 (La. App. 4 Cir. 11/22/17), 231 So. 3d 822, 824 (citing *Sassone v. Doe*, 11-1821, p. 3 (La. App. 4 Cir. 5/23/12), 96 So. 3d 1243, 1245). This requires a two-part assessment, wherein the appellate court must first conclude that the record does not provide a reasonable factual basis for the trial court's factual finding, and, second, that "the record establishes the finding is clearly wrong." *Lakewood Property Owners' Ass'n*, 17-0382, p. 3, 231 So. 3d at 824 (citing *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195, p. 12 (La. 7/6/10), 41 So. 3d 1119, 1127).

***Assignment of Error***

In his sole assignment of error, the appellant, Mr. Caldwell, contends that the trial court erred in failing to find that he actually performed work as an electrician when uncontroverted evidence established that the appellant did perform work as an electrician.

The appellant filed suit pursuant to two Louisiana wage statutes, La. R.S. 23:631 and La. R.S. 23:632. La. R.S. 23:631(A)(1)(a) governs the payment of employees after the termination of employment and sets forth that "[u]pon the discharge of any laborer or other employee of any kind whatever, it shall be the

6

duty of the person employing such laborer or other employee to pay the amount then due under the *terms of employment*." (Emphasis added).

The appellant concedes that he was hired as a laborer and paid the prevailing wages for a laborer. In order to prevail in his petition for an electrician's wages, the appellant must demonstrate that the terms of his employment for a laborer's wages were altered to the terms of employment for an electrician's wages. *Hammond v. Taylor*, 80 So. 2d 888, 889 (La. App. 1 Cir. 1955); *see Read v. Willwoods Cmty.*, 14-1475, p. 16 (La. 3/17/15), 165 So. 3d 883, 894.

Louisiana Civil Code Article 1846 requires that for contracts whose price or value is in excess of five hundred dollars, "the contract must be proved by at least one witness and other corroborating circumstances." While a party may serve as its own witness under Louisiana Civil Code Article 1846, "the corroborating circumstances that are required must come from a source other than the plaintiff." *Lakewood Estate Homeowner's Ass'n, Inc. v. Markle*, 02-1864, p. 6 (La. App. 4 Cir. 4/30/03), 847 So. 2d 633, 638 (citing *Hilliard v. Yarbrough*, 488 So. 2d 1038 (La. App. 2 Cir. 1986); *Pennington Const., Inc. v. R A Eagle Corp.*, 94-0575 (La. App. 1 Cir. 3/3/95), 652 So. 2d 637).

In the case *sub judice*, the appellant testified that he performed the work of an electrician and that he did so at the direction of his supervisor. This testimony was countered by the supervisor, Mr. Reeves, who asserted that the appellant undertook electrician helper work of his own volition and that neither he, nor the appellee, directed the appellant to do so. However, Mr. Reeves did testify that

7

once the appellant began undertaking this electrical work, he sometimes directed him to take photographs of blueprints in order to facilitate that work.

Mr. Poree maintained that he never directed the appellant to undertake electrical work. He also testified that his only discussion of electrical work with the appellant was regarding the possibility of the appellant becoming an electrical apprentice in the future, after this project. The appellant is not a licensed electrician and, according to his own testimony, did not have experience being paid at the rate of pay he currently seeks. Mr. Poree testified that on a prior job with the appellant, the appellant was paid by a temp service as a helper, not an electrician. Mr. Poree further stated that this wage was decided by the temp service without his involvement. The appellant testified that on that earlier job, he was paid for "electrical work" at a wage of $17 or $18 per hour. The appellant also testified that he had been paid that wage as an electrician on other jobs, but did not provide further details on how many jobs or for how long he had been paid this wage. The record does not contain any further evidence by the appellant to substantiate the existence of a contract to provide electrician's services in excess of five hundred dollars.

Although the appellant argued that uncontroverted evidence demonstrated that he performed work as an electrician, a review of the record in its entirety revealed conflicting testimony and a lack of corroborating circumstances to support the appellant's claim. Significantly, this Court is "without the benefit of the [d]istrict [c]ourt's appraisal of the credibility of the versions" of fact presented

8

and is bound to accord great deference to findings of fact based on the credibility of witnesses. *Segui v. Anthony*, 487 So. 2d 616, 618 (La. App. 4 Cir. 1986); *Hammond*, 80 So. 2d at 891. Therefore, we find that the trial court did not commit manifest error in holding that the evidence did not support the appellant's alleged change of classification from a laborer to an electrician.

***Penalty Wages & Attorney Fees***

The second statute the appellant filed suit under is La. R.S. 23:632. La. R.S. 23:632 states that:

> A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
>
> B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.
>
> C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

In addition to seeking to be paid an electrician's wages, the appellant also sought penalty wages and attorney fees. Preliminarily, penalty wages are only recoverable if an employer has failed to comply with La. R.S. 23:631. To recover

penalty wages pursuant to La. R.S. 23:632, the worker must establish: "(1) that wages were due and owing; (2) that demand for payment was made where the employee was customarily paid; and (3) that the employer did not pay upon demand." *Moore v. Centralized Management Services, LLC*, 21-0021, p. 7 (La. App. 4 Cir. 8/4/21), 324 So. 3d 704, 709 (citing *Rodriguez v. Green*, 12-0098, p. 6 (La. App. 4 Cir. 6/20/12), 111 So. 3d 1, 5). As we find that the trial court did not err in holding that the appellee complied with La. R.S. 23:631 by paying the wages owed under the terms of employment, penalty wages under La. R.S. 23:632 may not be granted.

Furthermore, even if an employer is found to owe wages, if the court finds that the dispute over wages due was in good faith, the employer is not subject to penalty wages. *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 17-0595, pp. 12-13 (La. App. 4 Cir. 2/14/18); 317 So. 3d 351, 360 (citing *Saacks v. Mohawk Carpet Corp.*, 03-0386, pp. 15-16 (La. App. 4 Cir. 8/20/03), 855 So. 2d 359, 370). The good or bad faith conduct of an employer is "a question of fact subject to the manifest error standard of review" and the "statute is strictly construed." *Bodenheimer*, 17-0595, p. 12, 317 So. 3d at 360 (citing *Hughes v. Cooter Brown's Tavern, Inc.*, 591 So. 2d 1334, 1337 (La. App. 4 Cir. 1991)). Penalty wages will not be imposed if there exists a "good faith dispute as to whether wages are actually owed," based on an employer's "good faith non-arbitrary defense to its liability for unpaid wages." *Bodenheimer*, 17-0595, pp. 12-12, 317 So. 3d at 360 (quoting *Magee v. Engineered Mech. Servs., Inc.*, 415 So. 2d 277, 279 (La. App. 1

10

Cir. 1982); *Saacks*, 03-0386, pp. 15-16, 855 So. 2d at 370). In this case, the appellee presented a good-faith, non-arbitrary defense to its liability because it paid the appellant the proper wages under the terms of employment.

Attorney's fees are mandatory in the event of a "well-founded" suit for wages due. La. R.S. 23:632. A well-founded suit is one in which the employee recovers contested wages. *See McNamara v. Greater New Orleans Biosciences Econ. Dev. Dist.*, 15-0748, p. 9 (La. App. 4 Cir. 2/3/16), 187 So. 3d 59, 64-65. As the appellant did not recover wages, he is unable to recover attorney's fees.

In an answer to the appeal, the appellee argued that the appellant should be condemned to pay its own attorney fees and costs, per La. C.C.P. art 2164. The appellant argued that the Court should not condemn him to pay the appellee's attorney fees and costs of defending this suit because the appellee failed to properly brief their request. However, the "proper procedure for an appellee to request frivolous appeal damages is to file either an answer to the appeal or a cross-appeal." *Phipps v. Schupp*, 17-0067, p. 3 (La. App. 4 Cir. 7/19/17), 224 So. 3d 1019, 1022; La. C.C.P. art. 2133(A). Thus, the appellee did properly brief their request, in keeping with the requirements of the Louisiana Code of Civil Procedure.

Nonetheless, La. C.C.P. art 2164 is a penal statute and "must be strictly construed in favor of the appellant." *Johnson v. Johnson*, 08-0060, p. 5 (La. App. 4 Cir. 5/28/08), 986 So. 2d 797, 801, (citing *Levy v. Levy*, 02-0279, pp. 17-18 (La. App. 4 Cir. 10/2/02), 829 So. 2d 640, 650). "Appeals are always favored and,

11

unless the appeal is unquestionably frivolous, damages will not be granted."

*Tillmon v. Thrasher Waterproofing*, 00-0395, p. 8 (La. App. 4 Cir. 3/28/01), 786 So. 2d 131, 137 (citing *George v. M & G Testing and Serv., Inc.*, 95-31 (La. App. 3 Cir. 7/19/95), 663 So. 2d 79, 86). Appeals are frivolous if appellant is merely attempting to create delays, "if the appealing counsel does not seriously believe the law he or she advocates," or if a substantial legal question is not presented. *Johnson*, 08-0060, p. 5, 986 So. 2d at 801 (quoting *Hester v. Hester*, 97-2009, p. 5 (La. App. 4 Cir. 6/3/98), 715 So. 2d 43, 46; *Tillmon*, 00-0395, p. 8, 786 So. 2d at 137). These circumstances are inapplicable in this case, therefore, attorney fees and costs are not available for the appellee.

*Federal Statutes*

Despite filing suit pursuant to La. R.S. 23:631 and La. R.S. 23:632, the appellant largely focused on language from federal statutes regarding prevailing wage requirements for public works projects. The appellant first argued that the Davis-Bacon Act applies to this project because the construction work on the Orleans Parish Juvenile Justice Center/Youth Study Center is a federally funded or assisted contract for construction of a public building. Mr. Poree did not contest that the subcontract LES obtained was for a Davis-Bacon project and that the relevant federal prevailing wage requirements apply. 40 U.S.C.A. § 3142(b).

The appellant also referred to 29 C.F.R. § 5.5(A)(1), which states that laborers and mechanics "shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed,

without regard to skill." The appellant argues that these two statutes require the appellee to disregard the appellant's classification as a laborer, set aside the contractual agreement to pay him a laborer's wages, and instead pay him for the electrical work he alleges he actually performed, at the federal prevailing wage rate for an electrician.

Courts across the country have grappled with whether the Davis-Bacon Act provides a private right of action for aggrieved workers and "the majority of courts that hold that such a private action may not be maintained." *Majstrovic v. R. Maric Piping, Inc.*, 171 Misc. 2d 429, 434; 655 N.Y.S. 2d 285, 288 (1997). In Louisiana, the Supreme Court analyzed whether a state prevailing wage statute, containing language similar to the Davis-Bacon Act, created a right of action. *Gibbs Const. Co., Inc. v. State, Dept. of Labor*, 525 So. 2d 1039, 1040 n. 2 (La. 1988). Neither the state statute nor the Davis-Bacon Act explicitly authorize a right of action to enforce payment. *Id.* The Supreme Court initially found that the state statute did create a right of action to recover unpaid wages because the state statute contained language ordering employers to pay wages due to employees. *Id.* The Court noted that the referenced language was distinguishable from the Davis-Bacon Act, which did not contain any orders for employers to pay. *Id.*

The Supreme Court later vacated this opinion and held that, like the Davis-Bacon Act, the state statute did not authorize a right of action. *Gibbs Const. Co., Inc. v. State, Dept. of Labor*, 540 So. 2d 268, 270 (La. 1989). The Court observed that it agreed with the United States Fifth Circuit's construction of the Davis-

Bacon Act in *United States v. Capeletti Bros. Inc.*, 621 F. 2d 1309, 1315 (5th Cir. 1980). *Gibbs Const. Co., Inc.*, 540 So. 2d at 269 n. 4 (La. 1989). In *Capeletti Bros. Inc.*, the Fifth Circuit found that the Davis-Bacon Act did not create a right of action and stated that "it is highly improbably that Congress absentmindedly forgot to mention an intended private action." *Capeletti Bros. Inc.*, 621 F. 2d at 1315.

Furthermore, in reference to the requirement within 29 C.F.R. § 5.5(A)(1) that workers be paid for the work actually performed without regard to their classification, our review supports the trial court's finding that the appellant performed the work of a laborer, and not an electrician.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in denying the appellant's petition for wages, penalty wages, attorney's fees, and request for summary proceedings. Consequently, we affirm the judgment of the trial court.

**AFFIRMED**